23642

Bertha M. ROBINSON, Petitioner v. STATE of South Carolina, Respondent.

(417 S.E. (2d) 88)

Supreme Court

*Asst. Appellate Defender Robert M. Dudek,* of *South Carolina Office of Appellate Defense,* Columbia, *for petitioner.*

*Atty. Gen. T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka,* and *Asst. Atty. Gen., Delbert H. Singleton, Jr.,* Columbia, *for respondent.*

Submitted Mar. 24, 1992; Decided Apr. 27, 1992.

Reh. Den. June 3, 1992.

HARWELL, Chief Justice:

We granted petitioner Bertha M. Robinson's petition for writ of certiorari to determine whether the postconviction relief (PCR) judge erred in finding that trial counsel's performance was not deficient. Petitioner alleges that trial counsel did not properly present the battered woman's syndrome in an effort to establish her claim of self-defense. We affirm.

## I. FACTS

In the early morning hours of December 22, 1979, petitioner shot her husband behind his right ear with a .22 caliber pistol while he slept. A jury found petitioner guilty of murder, and she was sentenced to life in prison. Petitioner timely appealed her conviction, which was affirmed.[1]

In 1989, petitioner applied for PCR. She alleged, among other things, that trial counsel was ineffective for failing to properly present the battered woman's syndrome to show that petitioner had acted in self-defense when she killed her husband. Petitioner's testimony reveals that she exhibited many of the characteristics of a battered woman. Trial counsel presented evidence of abuse in mitigation of petitioner's crime, but did not attempt to instruct the jury regarding the psychological effects of the battered woman's syndrome. The PCR judge found that trial counsel had performed within the range of competence demanded of attorneys in criminal matters.

## II. DISCUSSION

Petitioner asserts that trial counsel was ineffective in failing to properly utilize the battered woman's syndrome to establish that petitioner killed her husband in self-defense. We disagree.

A battered woman is a woman who repeatedly is subjected to any forceful physical or psychological behavior by a man in order to coerce her to do something he wants her to do without any concern for her rights. *Commonwealth v. Stonehouse*, 521 Pa. 41, 555 A. (2d) 772 (1989) (citing L. Walker, *The Battered Woman* xv (1979)). The battered woman's syndrome is identified by a series of common characteristics that appear in women who are abused for an extended period of time by the dominant male figure in their lives. *State v. Kelly*, 97 N.J. 178, 478 A. (2d) 364 (1984). These characteristics include fear, hypersuggestibility, isolation, guilt, and emotional dependency, which culminate in a woman's belief that she should not and cannot escape her batterer. *Stonehouse*, 521 Pa. at 62 n. 6, 555 A. (2d) at 783 n. 6 (citing Comment, *The Battered Spouse Syndrome as a Defense to a Homicide Charge Under the Pennsylvania Crimes Code*, 26 Vill. L. Rev. 105 (1980)). A battered

---

[1] *State v. Robinson*, 276 S.C. 435, 279 S.E. (2d) 372 (1981).

woman believes that her batterer is capable of killing her. *Ibn-Tamas v. United States*, 407 A. (2d) 626 (D.C. 1979).

The battered woman's syndrome results from the cyclical nature of the relationship between the battered woman and the man who abuses her. In the first phase of the cycle, tension increases between the woman and her partner, and minor abuse occurs. In the second phase, the violence escalates and the battering takes place. In the third phase, which occurs after the battering, there may be a temporary lull in the physical abuse inflicted on the woman, at which time the woman forgives the batterer. *State v. Allery*, 101 Wash. (2d) 591, 682 P. (2d) 312 (1984). During the third phase, the batterer may feel contrite and loving, and may promise the woman that the violence will never happen again. As the relationship progresses, however, the tension building before battering becomes more common, and the batterer's feelings of loving contrition decline. L. Walker, *The Battered Woman Syndrome* 97 (1984).

A battered woman suffers from "learned helplessness" as the "repeated batterings, like electrical shocks, diminish the woman's motivation to respond." *Id.* at 7. This stems from the battered woman's belief that her batterer is more powerful than he actually is, and her fear of retaliation if she summons help. *People v. Day*, 2 Cal. App. 4th 405, 2 Cal. Rptr. (2d) 916 (1992). As a result, she ceases trying to escape even when the opportunity to do so is present. *State v. Williams*, 787 S.W. (2d) 308 (Mo. Ct. App. 1990) (citing L. Walker, *The Battered Woman* 47 (1979)).

Having provided an abbreviated overview of the battered woman's syndrome, we turn to the issue before us: whether petitioner's trial counsel was ineffective for failing to present the battered woman's syndrome in the context of a claim of self-defense. To prove ineffective assistance of counsel, petitioner must show that her trial counsel's performance was not reasonable under prevailing professional norms. *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. (2d) 674 (1984). Further, petitioner must demonstrate that she was prejudiced by her trial counsel's deficient performance. *Id.* Our scope of review is limited to a determination of whether there is evidence of probative value in the record to support the PCR judge's findings. *Cherry v. State*, 300 S.C. 115, 386 S.E. (2d) 624 (1989).

■ This Court first recognize the battered woman's syndrome as relevant to a claim of self-defense in *State v. Hill*, 287 S.C. 398, 339 S.E. (2d) 121 (1986), six years after petitioner's trial. We cannot say that trial counsel was ineffective for failing to present evidence of a complex psychological phenomenon which had not yet been recognized by this Court, and which only recently had been identified by the scientific community.[2] Accordingly, we hold that the PCR judge did not err in finding that trial counsel's performance was within the range of competence demanded of attorneys in criminal matters.

We have not previously addressed the relationship between the battered woman's syndrome and the law of self-defense as it is defined in South Carolina, and will do so now briefly in order to provide some guidance to members of the bench and bar. We find that the unique perceptions of a defendant suffering from battered woman's syndrome are generally compatible with the law of this State regarding self-defense.

Self-defense is comprised of four elements:

> First, the defendant must be without fault in bringing on the difficulty. Second, the defendant must have actually believed he was in imminent danger of losing his life or sustaining serious bodily injury, or he actually was in such imminent danger. Third, if his defense is based upon his belief of imminent danger, a reasonably prudent [person] of ordinary firmness and courage would have entertained the same belief. If the defendant actually was in imminent danger, the circumstances were such as would warrant a [person] of ordinary prudence, firmness and courage to strike the fatal blow in order to save himself from serious bodily harm or losing his own life. Fourth, the defendant had no other probable means of avoiding the danger of losing his own life or sustaining serious bodily injury than to act as he did in this particular instance. If, however, the defendant was on his own premises he had no duty to retreat before acting in self-defense.

---

[2] Lenore E. Walker published her comprehensive work regarding battered women in 1979. *See* L. Walker, *The Battered Woman* (1979). According to Dr. Walker, the first epidemiological study of battered women was not undertaken in this country until 1976. *Id.* at 20.

*State v. Davis*, 282 S.C. 45, 317 S.E. (2d) 452 (1984). Self-defense is a complete defense; if established, a jury must find that the defendant is not guilty. *Id.*

The first element of self-defense requires evidence that a defendant not be at fault in bringing about the difficulty. Often a battered woman will kill an abuser during a confrontation when the man clearly is the aggressor, so that this element is satisfied. However, it may be possible to characterize a battered woman as the victim of a continuing assault at the hands of her batterer. When this is the case, the first element of self-defense may be satisfied even though the battered woman acts at a time when the batterer is not physically abusing her.

The second element of self-defense requires a defendant to actually have been in imminent danger, or to have believed that, at the time she acted, she was in imminent danger of death or serious bodily harm. At times, a battered woman actually is in imminent danger of violence when she acts. Depending upon the facts of each case, the second element of self-defense also may be satisfied when a battered woman believes she is in imminent danger of death or serious bodily harm even though her batterer is not physically abusing her when she acts. This is because battered women can experience a heightened sense of imminent danger arising from the perpetual terror of physical and mental abuse. Often the terror does not wane, even when the batterer is absent or asleep. *State v. Norman*, 324 N.C. 253, 378 S.E. (2d) 8 (1989) (Martin, J., dissenting) (citing Comment, *The Admissibility of Expert Testimony on the Battered Woman Syndrome in Support of a Claim of Self-Defense*, 15 Conn. L. Rev. 121 (1982)).

The third element of self-defense requires a defendant to show that a reasonable, prudent person in the same or similar circumstances would have acted as the defendant did in order to save herself. Where torture appears interminable and escape impossible, the belief that only the death of the batterer can provide relief may be reasonable in the mind of a person of ordinary firmness. *See Norman*, 324 N.C. at 270, 378 S.E. (2d) at 18. (Martin, Jr., dissenting.)

Under the fourth element of self-defense, a defendant must show that she had no other means of avoiding the danger than to act as she did. A battered woman who

is held hostage by her batterer may have no other means of avoiding a battering than to kill her batterer in self-defense. Moreover, a battered woman often may be able to claim the inapplicability of this element of self-defense because she acts while on her own premises, and has no duty to retreat.

Our interpretation of the relationship between the battered woman's syndrome and self-defense is cursory, at best, and should not be construed as this Court's last word on the subject. Our law will continue to evolve as the scientific community's understanding of the battered woman's syndrome develops and society's comprehension of the condition becomes more sophisticated.

Petitioner's remaining exceptions are without merit. The order of the PCR judge is

Affirmed.

CHANDLER, FINNEY, TOAL and MOORE, JJ., concur.