1843

METROPOLITAN LIFE INSURANCE COMPANY, Plaintiff v. Donna P. FOGLE, Jason B. Fogle (a minor of 14 years of age), and John J. Fogle (a minor under the age of 14 years), Defendants, of which Jason B. Fogle and John J. Fogle, minors, are Appellants, and Donna P. Fogle, is Respondent. Appeal of Jason B. FOGLE and John J. Fogle, minors.

(419 S.E. (2d) 825)

Court of Appeals

*James D. Nance, Henderson & Salley*, Aiken, *for appellants.*

*William T. Toal, Johnson, Toal & Battiste*, Columbia, *for respondent.*

Heard May 6, 1992.

Decided June 22, 1992.

SHAW, Judge:

This case arose when Metropolitan Life Insurance Company filed an interpleader complaint seeking to pay the proceeds of a life insurance policy on the life of Tillman V. Fogle into court and be dismissed from all liability. Appellants, Jason B. and John J. Fogle, the minor children of Tillman and Donna Fogle, answered and cross-claimed alleging their mother, respondent Donna P. Fogle, was the named beneficiary of the policy but was not entitled to the proceeds as she feloniously and intentionally killed Tillman. They further alleged entitlement to the proceeds as contingent beneficiaries. Donna moved for summary judgment based on the claim she shot her husband in self-defense. The trial judge granted the motion finding there was no material issue of fact as to any of the elements of self-defense. The children appeal. We affirm.

The facts of this case as developed at the criminal trial are undisputed. On March 22, 1988, after 19 years of marriage, Donna shot and killed her husband, Tillman, in their home. The record is replete with evidence of Tillman's history of beating and threatening Donna. During the last four years of their marriage, Tillman became exceedingly physically abusive toward his wife, resulting in numerous arrests of Tillman and separations between the parties. Each time Donna left Tillman, the cause of the separation was physical abuse and, the majority of these times, Tillman had been drinking heavily. During these last four years, Tillman also began to physically abuse the two children, although Donna intervened and kept this to a minimum. Donna estimated that Tillman physically abused her two or three times a week during the year 1988 and that approximately half of those times he threatened her with a weapon. Donna sought help from a mental health center and Tillman was hospitalized on at least three occa-

sions. Tillman was placed on medication which improved his condition; however, he refused to take his medication as directed once released from the hospital.

In November 1987, Tillman was arrested again and Donna filed for a legal separation. Unable to pay the family bills, Donna feared they would lose their home and agreed to a reconciliation that December. From that time until the following March, Donna testified the problems escalated and Tillman was at his worst. She stated that Tillman stopped seeing his counselor, Phil Harrison, and that he had started using cocaine. Donna was told by Tillman's counselor that Tillman was dangerous and he could snap at any time and kill her.

Donna had always kept a loaded pistol in the house that she used for protection because Tillman worked at night. When asked when she started carrying the weapon on her person, she stated it was during the last three months "after he almost beat me to death or came very close to killing me or strangling me . . . [a]nd I finally realized that he was going to kill me with his own two hands, choke me to death or something, and I wouldn't have a weapon to defend myself if he snapped and was going to kill me." She stated that she did not carry the gun on her person constantly, but only when he became physically abusive and she didn't know whether he was going to just beat her up or go ahead and kill her. She further stated that "when he got through knocking me around and slapping me and abusing me, if he passed out and went to bed, I'd take the gun and I'd put it up."

On March 4, 1988, Donna left Tillman again after another beating. She and one of her children stayed next door with her mother in a two bedroom trailer while her other child stayed with her sister. During this time, Tillman constantly called in the middle of the night and beat on her mother's door, begging Donna to come home. He also came over with a gun and shot into the trailer threatening to kill everyone in there. When Donna's grandmother came to stay with her mother, there was no room for her and the children and on March 20, 1988, Donna went back home, warning Tillman if he hit her again, she would leave and never return.

On the morning of March 22, 1988, Donna got up with the children to get them ready for school. Tillman, angered by something their son Jason said to his mother, began beating

Jason with a belt. Donna intervened, shoving Tillman off of Jason, because he was hitting him too hard with the belt. This incident caused Jason to miss the school bus, so Donna drove him to school. When Donna returned, Tillman began ridiculing her and they began to argue. Tillman started drinking alcohol and the argument continued throughout the day. Around noon, after Tillman had begun shoving and slapping Donna, she got her gun out of its hiding place. All day long, as the arguing continued, Donna threatened to leave, but Tillman consistently insisted that she stay.

Between 8:30 and 9:30 that evening, Tillman began beating Donna again, at which point she escaped from him and telephoned her mother to tell her she was coming over and to ask her to meet her halfway. She informed Tillman she was leaving and headed for the front door at which time she stated that Tillman "snapped." She managed to open the door some when she noted a change in his voice. She testified as follows:

> I looked at him. His face was white. He said, "Donna, I'm going to kill you. Don't go out that door. You're going to make me kill you." He said, "I'll kill you tonight before I let you go out the door." And then he broke down. He said, "Because I know if you go out the door, you've already told me you will never come back."

As Donna started out the door, Tillman slapped her, knocking her to the floor. He got on top of her, pinned her down and began choking her, pulling her mouth open, ramming his fingers down her throat and trying to break her neck. At one point, he removed a ring from her finger, put it in his mouth and chewed it up. She stated she pulled the gun out because he was choking her and pulling her mouth and chewing her ring and that he had snapped and was going to kill her. When asked why she shot Tillman she stated, "Because he was going to kill me on the floor." Donna was tried in criminal court in connection with Tillman's death and was found not guilty.

S.C. Code Ann. § 62-2-80 (1987) provides in pertinent part:

> (c) A named beneficiary of a bond, life insurance policy, or other contractual arrangement who feloniously and intentionally kills the principal obligee or the person upon whose life the policy is issued is not entitled to any benefit

under the bond, policy, or other contractual arrangement. . . .

(e) A final judgment of conviction of felonious and intentional killing is conclusive for purposes of this section. In the absence of a conviction of felonious and intentional killing the court may determine by a preponderance of evidence whether the killing was felonious and intentional for purposes of this section.[1]

The appellants contend the trial judge erred in granting summary judgment based on the defense of self-defense. They argue an inference exists that Donna did not kill Tillman in self-defense, but intentionally placed herself in a position to continue receiving the physical abuse from Tillman so she would have the "opportunity to kill him and claim justification." We disagree.

It is true that, even though there may be no dispute as to evidentiary facts, when there is a dispute as to the inferences or conclusions that can be drawn from a set of facts, summary judgment may not be granted. *Hamilton v. Miller*, 301 S.C. 45, 389 S.E. (2d) 652 (1990). However, the facts here are undisputed and clearly establish that Donna killed Tillman in self-defense. *See State v. Davis*, 282 S.C. 45, 317 S.E. (2d) 452 (1984) (the four elements required to establish self-defense are (1) the party must be without fault in bringing on the difficulty; (2) the party must have actually believed he was, or actually been, in imminent danger of losing his life or sustaining serious bodily injury; (3) if the defense is based upon belief of imminent danger a reasonably prudent man of ordinary firmness and courage would have entertained the same belief and, if the party actually was in imminent danger, the circumstances were such as would warrant a man of ordinary prudence, firmness and courage to strike the fatal blow in order to save himself from serious bodily harm or loss of life, and; (4) the party had no probable means of avoiding the danger of losing his own life or sustaining serious bodily

---

[1] The Reporter's Comments to this section make clear that the lack of a conviction of felonious and intentional killing is no bar to invocation of this provision where the killing is proved by the preponderance of the evidence.

injury than to act as he did in the particular instance. However, a party on his own premises has no duty to retreat before acting in self-defense.).

Contrary to the appellant's assertion, there are absolutely no facts from which it can reasonably be inferred that the killing was anything other than self-defense. The mere fact that Donna stayed with Tillman after the abuse began does not lead to a logical inference that she did so in order to feloniously kill Tillman. To the contrary, all of the evidence indicates that Donna stayed with Tillman in an attempt to keep her family together and that, on the day in question, she was, in fact, attempting to leave Tillman, which resulted in his tragic death. In the case at hand, there are simply no facts nor inferences to be drawn from the facts which would indicate Donna feloniously killed Tillman.[2]

We find no reasonable inference in this factual situation from which it could be concluded that Donna Fogle feloniously killed Tillman Fogle. Every indication is that the respondent fatally shot her husband in self-defense.[3] Accordingly, the order below is affirmed.

Affirmed.

GARDNER and BELL, J.J., concur.

---

[2] We are not suggesting that a situation may never occur where a party feloniously kills another and sets it up to appear that it was self-defense. However, there must be some fact from which a reasonable inference can be drawn that the killing was indeed felonious in order to defeat a summary judgment motion.

[3] While the battered woman's syndrome was not raised in the case at hand, we note that the fact situation here appears to comply with many of the requirements of this mode of self-defense and such appears to negate the appellants' argument that there is an inference the killing was felonious. *See Robinson v. State of South Carolina*, 417 S.E. (2d) 88 (S.C. Sup. Ct. 1992). Because this issue was not raised, and, in as much as our Supreme Court has specifically noted its treatment of this subject has only been cursory to date, we do not address what bearing it has on the case at hand.