**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Elvira Lynn Seay, Petitioner,

v.

State of South Carolina, Respondent.

Appellate Case No. 2016-000408

_____

Appeal From Greenville County
Letitia H. Verdin, Plea Court Judge
Robin B. Stilwell, Sentencing Judge
Perry H. Gravely, Post-Conviction Relief Judge

_____

Unpublished Opinion No. 2019-UP-160
Submitted March 1, 2019 – Filed May 1, 2019

_____

**REVERSED AND REMANDED**

_____

Appellate Defender Kathrine Haggard Hudgins, of Columbia, for Petitioner.

Senior Assistant Deputy Attorney General Megan Harrigan Jameson, of Columbia, for Respondent.

_____

**PER CURIAM:** Elvira Lynn Seay appeals the post-conviction relief (PCR) court's order denying her application for PCR. On appeal, Seay argues plea counsel was ineffective for not asking the sentencing court to consider whether she

was eligible for early parole pursuant to section 16-25-90 of the South Carolina Code (2015).  We reverse and remand.

Seay was indicted for murder and possession of a weapon during the commission of a violent crime following the death of her live-in boyfriend, Juan Tafoya-Gonzalez; she pled guilty to voluntary manslaughter.  During the plea hearing, the State indicated there was "some evidence [showing Tafoya-Gonzalez] was abusive towards [Seay] in the past and, perhaps, even that night."  In mitigation, plea counsel stated he planned to pursue a battered women's syndrome defense at trial, but Seay decided to plead guilty.  Plea counsel explained he hired Dr. Lois Veronen, a psychologist, to evaluate Seay and prepare a report explaining how Seay's background, "her tendency towards victimization," and "the things that ha[d] happened in her childhood and in this particular relationship . . . contributed to her behavior."  The report, which was submitted to the sentencing court, explained battered woman's syndrome and described Seay's relationship with Tafoya-Gonzalez.  According to the report, Tafoya-Gonzalez "hit [Seay] so hard he broke her back tooth"; "isolated her from friends"; criticized her; "harassed her at [work] and ordered her to quit"; forced her to deal cocaine; "pulled her from [a] vehicle by her hair and struck her repeatedly," which tore out her hair and gave her a black eye and a bloody mouth; choked her; beat her; and forced her to have sex.  The report concluded,

> [Seay's] past victimizations and her ongoing victimization by [Tafoya-Gonzalez] contributed to increased anxiety and fear, guilt, and feelings of self-blame. . . .  As a result of her previous victimizations [Seay] experienced cognitive, affective, and behavioral changes that are characteristics of the "Battered Woman Syndrome."

After submitting the report, plea counsel stated, "[Seay] has been a victim many times in her life[, i]ncluding in this relationship.  He put her in the hospital a couple of times.  [Those instances] never became domestic violence cases because she was afraid to report."  Although plea counsel asserted Seay was a victim of Tafoya-Gonzalez, he did not ask the court to consider whether she was eligible for early parole pursuant to section 16-25-90, which provides an inmate parole eligibility after serving one-fourth of her prison term if the inmate "present[s] credible evidence of a history of criminal domestic violence . . . suffered at the hands of the household member."  The plea court determined the facts did not

show Seay acted in self-defense at the time of the shooting and sentenced her to twenty-five years' imprisonment. Seay did not appeal.

Seay filed an application for PCR. At the PCR hearing, she testified she was in a relationship with Tafoya-Gonzalez for seven years, and he was physically and mentally abusive. Seay described three occasions that resulted in her going to the hospital. Plea counsel acknowledged Seay told him about the prior abuse; he testified, "That was pretty much what we had to work with as far as a defense or mitigation in this case was the history of domestic violence in that relationship." Plea counsel explained he hired Dr. Veronen to evaluate Seay and determine whether the battered woman syndrome defense applied, but Dr. Veronen "wasn't confident that the situation arose to a pure battered women's syndrome defense." Plea counsel testified he was not aware of section 16-25-90, but he would have tailored his argument to fit the statute and asked the sentencing court to make a finding under the statute if he had known it existed.

In its order, the PCR court found plea counsel "conducted a proper investigation in an attempt to formulate a battered woman defense," and Seay did not prove "plea counsel did not properly investigate and present a mitigation case." After finding plea counsel credible, the PCR court relied on counsel's testimony that Seay's medical records and Dr. Veronen's report were not helpful in formulating a battered woman's defense and "it was difficult to find information to corroborate [Seay's] story." Finally, citing section 16-25-90, the PCR court found Seay did not present evidence to "support her argument that a compelling battered woman defense could have been made at the trial level—thus affecting her parole eligibility." Although the court generally noted it "observe[d] each witness[,] . . . closely pass[ed] upon their credibility," and weighed the testimony accordingly, it did not make specific findings on Seay's credibility.

On appeal, Seay argues plea counsel was ineffective for not asking the sentencing court to consider whether she was eligible for early parole pursuant to section 16-25-90. We agree plea counsel was deficient and remand this case to the circuit court to determine whether Seay is eligible for early parole pursuant to section 16-25-90.

"In [PCR] proceedings, the burden of proof is on the applicant to prove the allegations in his application." *Speaks v. State*, 377 S.C. 396, 399, 660 S.E.2d 512, 514 (2008). This court "defer[s] to a PCR court's findings of fact and will uphold them if there is any evidence in the record to support them." *Mangal v. State*, 421 S.C. 85, 91, 805 S.E.2d 568, 571 (2017). "We do not defer to a PCR court's

rulings on questions of law." *Id*. This court defers to a PCR court's credibility findings. *Simuel v. State*, 390 S.C. 267, 270, 701 S.E.2d 738, 739 (2010).

Our supreme court "first recognized the battered woman's syndrome as relevant to a claim of self defense in *State v. Hill*, 287 S.C. 398, 339 S.E.2d 121 (1986)." *Robinson v. State*, 308 S.C. 74, 78, 417 S.E.2d 88, 90 (1992). In *Robinson*, our supreme court gave an overview of battered woman's syndrome and determined "the unique perceptions of a defendant suffering from battered woman's syndrome are generally compatible with . . . self-defense." *Id*. at 76-78, 417 S.E.2d at 90-91. "Self-defense is a complete defense; if established, a jury must find that the defendant is not guilty." *Id*. at 79, 417 S.E.2d at 91.

In 1995, the General Assembly enacted legislation providing "[e]vidence that the actor was suffering from the battered spouse syndrome is admissible in a criminal action on the issue of whether the actor lawfully acted in self defense . . . ." S.C. Code Ann. § 17-23-170 (2014). When the General Assembly enacted section 17-23-170, it also enacted section 16-25-90, which was "intended to confer early parole eligibility to long term victims of repeated abuse at the hands of a household member." *State v. Hawes*, 411 S.C. 188, 190 n.2, 767 S.E.2d 707, 708 n.2 (2015). Section 16-25-90 provides:

> [A]n inmate who was convicted of, or pled guilty or nolo contendere to, an offense against a household member is eligible for parole after serving one-fourth of his prison term when the inmate at the time he pled guilty to . . . an offense against the household member, or in [PCR] proceedings pertaining to the plea or conviction, presented credible evidence of a history of criminal domestic violence, as provided in [s]ection 16-25-20 [of the South Carolina Code (Supp. 2018)], suffered at the hands of the household member. This section shall not affect the provisions of [s]ection 17-27-45 [of the South Carolina Code (2014)].

Here, the PCR court erred by conflating the battered woman's defense with the early parole eligibility statute. In its order, the PCR court found, "[Seay] failed to present any evidence at the PCR hearing . . . that would support her argument that a compelling battered woman defense could have been made at the trial level— thus affecting her parole eligibility." However, the battered woman's defense is premised on self-defense, which—if successful—would exonerate a defendant.

*See Robinson*, 308 S.C. at 78, 417 S.E.2d at 91 ("[T]he unique perceptions of a defendant suffering from battered woman's syndrome are generally compatible with the law of . . . self-defense."); *id*. at 79, 417 S.E.2d at 91 ("Self-defense is a complete defense; if established, a jury must find that the defendant is not guilty."). Although the early parole eligibility statute was enacted in conjunction with legislation regarding the battered woman defense, the early parole eligibility statute is only available to a defendant who is convicted of the crime, which would not be the case if the defendant successfully argued self-defense or battered woman's syndrome. The PCR court's ruling suggests it conflated these two concepts, which was error.

Further, probative evidence does not support the PCR court's finding that plea counsel was not deficient. In finding plea counsel not deficient, the PCR court relied on plea counsel's testimony that he did not believe there was sufficient evidence to support a battered woman's defense. However, plea counsel acknowledged Seay discussed a history of abuse. He also acknowledged he was not aware of the early parole eligibility statute, despite its enactment eighteen years prior to the plea hearing. Finally, Dr. Veronen's report was evidence that Seay suffered from abuse. Based on the foregoing, plea counsel was deficient in not asking the sentencing court to consider the early parole eligibility statue.

However, this court cannot determine whether Seay was prejudiced by this deficiency. *See State v. Blackwell-Selim*, 392 S.C. 1, 3, 707 S.E.2d 426, 427 (2011) (finding the court of appeals erred in reviewing the record to make findings about the defendant's eligibility under section 16-25-90 when the plea court did not make "specific findings of fact as to why [the defendant] was ineligible for early parole"). Seay presented evidence of abuse at the sentencing hearing and PCR hearing, but the PCR court did not rule on the credibility of Seay's testimony or the additional evidence, and it did not consider whether Seay presented a preponderance of evidence showing abuse. Thus, we remand this case to the circuit court to consider the evidence presented by Seay and determine whether she is eligible for early parole pursuant to section 16-25-90. *See id.* at 4, 707 S.E.2d at 428 ("[M]ere production of evidence does not automatically result in earlier parole eligibility; instead, the defendant must persuade the [court] by presenting proof which leads the trier of fact to find that the existence of the contested fact is more probable than its nonexistence."); *id.* at 3-4, 707 S.E.2d at 428 ("Such a history must be proven by a preponderance of the evidence."); *id.* at 4, 707 S.E.2d at 428 ("The defendant must persuade the [court] her evidence is reliable."); *id.* ("The circuit court must make specific findings in ruling on parole eligibility or ineligibility under [section] 16-25-90.").

**REVERSED AND REMANDED.**[1]

**LOCKEMY, C.J., and SHORT and MCDONALD, JJ., concur.**

---

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.