586 S.E.2d 119

**David GIBSON and Donnie Ray Gibson, Petitioners,**

v.

**STATE of South Carolina, Respondent.**

No. 25706.

Supreme Court of South Carolina.

Submitted Feb. 20, 2003.

Decided Aug. 25, 2003.

Assistant Appellate Defender Aileen P. Clare, of Columbia, for Petitioners.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General B. Allen Bullard, Assistant Attorney General William Bryan Dukes, all of Columbia, for Respondent.

CHIEF JUSTICE TOAL:

David and Donnie Ray Gibson submit that the post-conviction relief ("PCR") judge erred in denying their PCR applications.

## FACTUAL/PROCEDURAL BACKGROUND

David and Donnie Ray Gibson were convicted of murdering Marvin Bramlett ("Bramlett") in Seneca, South Carolina on July 23, 1976 and sentenced to life imprisonment.

Donnie Ray applied for PCR in 1981, which was denied and this Court affirmed. *Gibson v. State,* Op. No. 83–MO–029 (S.C. Sup Ct. filed January 24, 1983). Donnie Ray and David petitioned for writs of habeas corpus in 1995, which were denied. On appeal, this Court remanded their cases to be considered as separate PCR applications. *Gibson v. State,* 329 S.C. 37, 495 S.E.2d 426 (1998). Petitioners now appeal the PCR judge's denial of post-conviction relief and raise the following issues for review:

  I.   Did the PCR judge err in denying Donnie Ray's petition for post-conviction relief because it was a successive application?

  II.  Did the trial judge's malice charge shift the burden from the prosecution to the defense, and if so, should this Court retroactively apply *Sandstrom v. Montana* to grant a new trial?

## LAW/ANALYSIS

### I

Donnie Ray asserts that the PCR judge erred in finding that he has applied for successive PCR petitions. We disagree.

Donnie Ray wants to assert that he should be granted a new trial because of the trial judge's defective malice charge, which was deemed unconstitutional in *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). This Court disfavors successive PCR applications, especially when the new ground that the petitioner raises could have been raised in his initial application. *Tilley v. State,* 334 S.C. 24, 511

S.E.2d 689 (1999); *Aice v. State,* 305 S.C. 448, 409 S.E.2d 392 (1991).

Since the U.S. Supreme Court decided *Sandstrom* in 1979, Donnie Ray could have raised the issue in 1981, in his first application. Therefore, we find that he should not be able to raise the issue in the present PCR application.

## II

David asserts that this Court should retroactively apply *Sandstrom v. Montana* to the defective malice charge that the trial judge enunciated to the jury. We disagree.

Donnie Ray and David shot and killed Marvin Bramlett in January 1976. The brothers and Bramlett had a history of dislike for one another, which involved Bramlett pointing a handgun at Donnie Ray, Donnie Ray slapping Bramlett over the head, and various verbal threats uttered by both parties during the time leading up to Bramlett's death. On the night of the killing, the hostility that the parties shared for each other escalated as both Bramlett and Donnie Ray fired warning gunshots in the air towards each other.

Bramlett got into the car of a friend, Theresa Edwards ("Edwards"), and told her his plans to kill Donnie Ray when he said, "He's crazy. I'm going to kill him tonight." Meanwhile, Donnie Ray returned to town and found David. They got in their car, which contained their two loaded guns in the back. On their way out of town, they saw Edwards' car on the side of the road and slowed down to speak with Edwards not knowing that Bramlett was in the vehicle. Bramlett got out of the car and fired his sawed off shotgun in the direction of the brothers' car. Donnie Ray then shot his 30-30 at Bramlett through the back window of Edwards' car, which knocked Bramlett down. David got out of the car, walked around Edwards' car, and shot Bramlett three times with a .22 magnum as Bramlett was crawling in his direction. Bramlett died on the scene.

At David and Donnie Ray's trial, the trial judge charged the jury on malice as follows:

I charge you that malice is presumed from the willful, deliberate, intentional commission of a felony, and murder is

a felony, or an unlawful act without just cause or excuse. In other words, in its general signification, malice means the doing of a wrongful act intentionally and without just cause or excuse.

I charge you also that even if the facts proven are sufficient to raise the presumption of malice, such presumption would be a rebuttable one, and it is for you, the jury, to determine from all the evidence whether or not malice has been proven in the case.

I charge you further that malice is presumed from the use of a deadly weapon, and I charge you in that connection, that the burden is on the State to prove malice by evidence, satisfying you beyond a reasonable doubt. This presumption is also a rebuttable one. And when all the facts and circumstances are brought out in the evidence, the presumption vanishes and it is for you to determine from all the facts and circumstances whether or not malice did, in fact, exist.

The U.S. Supreme Court found this malice charge unconstitutional in *Sandstrom*, because when the trial judge states that a jury can presume malice, he is alleviating the prosecution's burden of proof of one of the elements of murder and implying that the burden shifts to the defense to disprove the presumption. We believe the malice charge quoted above is unconstitutional because the charge effectively shifted the burden to prove malice from the prosecution to the defense. *See also, Yates v. Aiken,* 484 U.S. 211, 108 S.Ct. 534, 98 L.Ed.2d 546 (1988); *Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985).

But during the trial, which took place in 1976, the instruction that permits the jury to presume malice if the homicide is committed with a deadly weapon was not yet deemed an unconstitutional burden shift from the prosecution to the defense. Thus, this Court could grant the brothers a new trial only if *Sandstrom* is retroactively applied, and in our opinion, *Sandstrom* should not be retroactively applied in this case based on the U.S. Supreme Court's analysis of when the retroactivity of a landmark criminal procedure decision can be collaterally attacked.

The U.S. Supreme Court set forth two exceptions to the general principle that landmark criminal procedure decisions should not have a retroactive effect in *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). The first exception is that a decision may be retroactively applied "if it places 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe.'" *Teague,* 489 U.S. at 311, 109 S.Ct. at 1075 (quoting Justice Harlan's opinion in *Mackey v. United States,* 401 U.S. 667, 692, 91 S.Ct. 1160, 1180, 28 L.Ed.2d 404 (1971)). This first exception is not applicable to this case. The second exception applies to "those new procedures without which the likelihood of an accurate conviction is seriously diminished." *Id.*[1]

We hold that the defective malice charge did not rise to the very high standard established in *Teague.* We do not believe that the accuracy of the Gibson brother's murder conviction was seriously diminished by the charge that allowed the jury to presume malice. The jury heard plenty of testimony that established the malice element. For example, the brothers testified that they killed Bramlett; the defense stipulated that the brother's weapons were used to kill Bramlett; the brothers had a prior history of altercations with Bramlett; knowing that Bramlett was out to cause trouble on the evening of the killing, the brothers armed themselves with loaded weapons and carried them in the back seat of their vehicle; and David testified that he shot Bramlett two times with his .22 Magnum as Bramlett was in a crouch beside Edwards' car. Based on this evidence, we do not believe that the jury's capacity to arrive at a verdict was seriously diminished by the defective malice charge. *See Adams,* 965 F.2d 1306 (holding that the *Cage v. Louisiana,* reasonable doubt rule should not be retroactively applied because it does not meet the *Teague* standard).

## HARMLESS ERROR

This Court has employed a harmless error analysis in reviewing post-*Sandstrom* defective malice charges. *See e.g.,*

---

1. The same test for retroactivity was applied by the Fourth Circuit Court of Appeals in *Adams v. Aiken,* 965 F.2d 1306, 1312 (4th Cir.1992).

*Arnold v. State,* 309 S.C. 157, 420 S.E.2d 834 (1992). Since, we find that *Sandstrom* should not be retroactively applied to this case, it is unnecessary to employ the harmless error analysis to review the effect of the defective malice charge in this case. Nevertheless, even if a harmless error analysis was applied to the defective malice charge, we believe that the jury found malice based on the evidence presented at trial and *not* based upon the judge's instruction allowing it to presume malice.

## CONCLUSION

For the foregoing reasons, we find that the *Sandstrom* decision should not be retroactively applied to this case because the stringent *Teague* standard has not been met, as the validity of the murder conviction was not seriously diminished by the defective malice charge. Accordingly, we **AFFIRM** the PCR judge's denial of the Gibson brothers' applications for PCR.

MOORE, WALLER and BURNETT, JJ., concur.

PLEICONES, J., concurring in a separate opinion.

JUSTICE PLEICONES CONCURRING:

These matters come before the Court on certiorari to two circuit court orders denying petitioners' applications for post-conviction relief (PCR). I concur in the majority's decision to affirm the orders, but write separately because I view the issues in a slightly different light.

A. Donnie Ray Gibson

Petitioner Donnie Ray Gibson (Donnie) contends the circuit court erred in summarily dismissing his PCR application as successive.[2] While I tend to agree,[3] the PCR judge went

---

**2.** In 1998, we remanded an order summarily dismissing Donnie's and David's petitions for habeas corpus and instructed the circuit court to treat the habeas petitions as PCR applications. *Gibson v. State,* 329 S.C. 37, 495 S.E.2d 426 (1998). On remand, the brothers were required to show why their applications were not impermissibly successive. *Id.*

**3.** *But see Keeler v. Mauney,* 330 S.C. 568, 500 S.E.2d 123 (Ct.App.1998) (South Carolina's reluctance to acknowledge and apply *Sandstrom v.*

further and addressed the merits of Donnie's claim that his trial counsel were ineffective in failing to object to the trial judge's malice charge. I agree with the PCR judge that counsel were not ineffective in failing to anticipate at Donnie's 1976 trial that in 1979 the United States Supreme Court would declare the malice charge unconstitutional. *See, e.g., Gilmore v. State,* 314 S.C. 453, 445 S.E.2d 454 (1994) (trial counsel not required to be clairvoyant). The question is whether trial counsels' performance met prevailing professional norms.[4] *Robinson v. State,* 308 S.C. 74, 417 S.E.2d 88 (1992). There is probative evidence in this record to support the PCR judge's finding that counsel were not ineffective in failing to object to the malice charge, and therefore we should uphold that finding. *Id.* Accordingly, I agree with the majority that we should affirm the PCR order denying Donnie relief.

### B. David Gibson

We granted certiorari to review Petitioner David Gibson's (David's) claim that the circuit court judge erred in denying David's request for PCR. Like his brother Donnie, he contends that the malice charge given at their joint 1976 trial violated the Constitution. Like Donnie, David raised this claim below solely as one of ineffective assistance of counsel. For the reasons given above, I agree with the majority that

*Montana* did not excuse applicant's failure to raise claim in first PCR application).

4. I recognize the validity of Donnie's contention that *Sandstrom v. Montana* is merely a logical extension of *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) and *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). *See, e.g. Francis v. Franklin,* 471 U.S. 307, 326, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985) (*"Sandstrom v. Montana* made clear that the Due Process Clause of the 14th Amendment prohibits the State from making use of jury instructions that have the effect of relieving the State of the burden of proof enunciated in *In re Winship* on the critical question of intent in a criminal prosecution. Today we reaffirm the rule of *Sandstrom* and the wellspring due process principle from which it was drawn"). Had Donnie framed his claim as a violation of his due process rights, rather than as a violation of his sixth amendment right to counsel, I would reach the issue of retroactivity under *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). Were I to reach this issue, I would not necessarily find that *Sandstrom* did not apply retroactively. *See, e.g., Hall v. Kelso* 892 F.2d 1541 (11th Cir.1990).

we should affirm the PCR judge's ruling denying David relief on this claim.

## C. Conclusion

I concur in the majority's decision to affirm the PCR orders denying Donnie and David post-conviction relief. Unlike the majority, I would not reach the retroactivity issue. Were I to find it necessary to reach the claim, I would employ a different analytical approach. In my opinion, whether to apply a new decision retroactively under *Teague v. Lane* is determined by applying the *Teague v. Lane* exceptions to that new decision. Therefore, I would analyze the *Sandstrom* decision to determine whether it met a *Teague v. Lane* exception. Only if I found that *Sandstrom* met one of these exceptions would I engage in a review of the facts of the case in which the unconstitutional malice charge was given to determine, on a case-by-case basis, whether the defendant in that pre-*Sandstrom* case had been so prejudiced by the charge that he was entitled to a new trial.

For the reasons given above, I concur in the majority's decision to affirm the PCR orders.