640 S.E.2d 878

**William R. TALLEY, Respondent,**

v.

**STATE of South Carolina, Petitioner.**

**No. 26250.**

Supreme Court of South Carolina.

Submitted Sept. 20, 2006.

Decided Jan. 22, 2007.

---

538

Attorney General Henry Dargan McMaster; Chief Deputy Attorney General John W. McIntosh; Assistant Deputy Attorney General Salley W. Elliott; Assistant Attorney General Christopher L. Newton, all of Columbia, for Petitioner.

Walter H. Hinton, II, of Nelson Mullins Riley & Scarborough, LLP, of Greenville; and Aisha S. Lusk, of Nelson Mullins Riley & Scarborough, LLP, of Columbia, for Respondent.

Justice BURNETT:

This is a post-conviction relief (PCR) case. The PCR judge granted relief to William R. Talley (Respondent). We granted the State's petition for writ of certiorari and reverse.

## FACTUAL/PROCEDURAL BACKGROUND

In 1995, Respondent pled guilty to possession of drug paraphernalia in magistrate's court and paid a $200 fine. In 1996, he pled guilty to criminal domestic violence also in magistrate's court. Respondent received a $940 fine and was sentenced to thirty days' imprisonment, immediately suspended on the condition of six months' good behavior. In 2003, Respondent filed this PCR application to set aside the two misdemeanor convictions alleging his federal constitutional right to counsel had been violated because he was not represented by counsel in either conviction.

Respondent is currently serving a 97–month federal sentence for conspiracy to possess with intent to distribute and distribution of cocaine and cocaine base. He was assessed two criminal history points for the two state convictions under the United States Sentencing Guidelines. Respondent contends his federal sentence was enhanced by approximately ten months because of these criminal history points.

The State moved to summarily dismiss Respondent's PCR application for failure to file within the statute of limitations pursuant to S.C.Code Ann. § 17–27–45(A) (2003).[1] Respondent argued his PCR application was timely filed under S.C.Code Ann. § 17–27–45(B)[2] because it was filed within one

---

1. Section 17–27–45(A) provides:

    An application for relief filed pursuant to this chapter must be filed within one year after the entry of a judgment of conviction or within one year after the sending of the remittitur to the lower court from an appeal or the filing of the final decision upon an appeal, whichever is later.

    In *Peloquin v. State*, 321 S.C. 468, 469 S.E.2d 606 (1996), the Court held that all defendants convicted prior to July 1, 1995, the effective date of 17–27–45, must be allowed until July 1, 1996, to file a PCR application.

2. Section 17–27–45(B) provides:

year of *Alabama v. Shelton*, 535 U.S. 654, 122 S.Ct. 1764, 152 L.Ed.2d 888 (2002).

The PCR judge denied the motion to dismiss and held Respondent had timely filed his PCR application under § 17–27–45(B) because *Shelton* created a new rule that must be applied retroactively on collateral review. The PCR judge determined, under *Shelton*, the constitutional right to counsel applied to Respondent's convictions and Respondent had not waived the right. The PCR judge concluded Respondent's right to counsel had been violated in both convictions and vacated Respondent's convictions.

## *ISSUE*

Did the PCR judge err in applying *Alabama v. Shelton*, 535 U.S. 654, 122 S.Ct. 1764, 152 L.Ed.2d 888 (2002), retroactively on collateral review to Respondent's convictions?

## *STANDARD OF REVIEW*

A PCR applicant bears the burden of establishing that he is entitled to relief. *Caprood v. State*, 338 S.C. 103, 109, 525 S.E.2d 514, 517 (2000). The Court will uphold the findings of the PCR judge when there is any evidence of probative value to support them. *Id.* at 109–10, 525 S.E.2d at 517. The Court will reverse the PCR judge's decision when it is controlled by an error of law. *Pierce v. State*, 338 S.C. 139, 145, 526 S.E.2d 222, 225 (2000).

## *LAW/ANALYSIS*

The State argues the PCR judge erred in applying *Shelton* retroactively on collateral review to Respondent's convictions. We conclude the PCR judge correctly determined *Shelton*

---

When a court whose decisions are binding upon the Supreme Court of this State or the Supreme Court of this State holds that the Constitution of the United States or the Constitution of South Carolina, or both, impose upon state criminal proceedings a substantive standard not previously recognized or a right not in existence at the time of the state court trial, and if the standard or right is intended to be applied retroactively, an application under this chapter may be filed not later than one year after the date on which the standard or right was determined to exist.

must be applied retroactively on collateral review, but erroneously applied *Shelton* to Respondent's convictions.

■ The State urges us to apply both *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), and *State v. Jones,* 312 S.C. 100, 439 S.E.2d 282 (1994), to determine whether *Shelton* should be applied retroactively on collateral review. We disagree. In determining whether Respondent was deprived of his federal constitutional right to counsel, we are required to follow the United States Supreme Court's decisions on retroactivity. *Am. Trucking Ass'ns, Inc. v. Smith,* 496 U.S. 167, 178, 110 S.Ct. 2323, 2330, 110 L.Ed.2d 148, 159 (1990) ("In order to ensure the uniform application of decisions construing constitutional requirements and to prevent States from denying or curtailing federally protected rights, we have consistently required that state courts adhere to our retroactivity decisions."); *see also, e.g., State v. Means,* 367 S.C. 374, 626 S.E.2d 348 (2006) (applying *Jones* in determining *State v. Gentry,* 363 S.C. 93, 610 S.E.2d 494 (2005), should be applied retroactively); *State v. Hill,* 361 S.C. 297, 604 S.E.2d 696 (2004) (applying *Jones* in determining *State v. Sutton,* 340 S.C. 393, 532 S.E.2d 283 (2000), should be applied retroactively); *Gibson v. State,* 355 S.C. 429, 586 S.E.2d 119 (2003) (applying *Teague* to determine whether *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), should be applied retroactively on collateral review).

■ In general, the question of whether a decision announcing a new rule should be given prospective or retroactive effect should be addressed at the time of the decision. *Teague,* 489 U.S. at 300, 109 S.Ct. at 1070, 103 L.Ed.2d at 349. "[A] case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government. To put it differently, a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Id.* at 301, 109 S.Ct. at 1070, 103 L.Ed.2d at 349 (internal citations omitted) (emphasis in original).

■ In *Shelton,* the Supreme Court held the constitutional right to counsel extends to a defendant who receives a "suspended sentence that may 'end up in the actual deprivation of a person's liberty.'" 535 U.S. at 658, 122 S.Ct. at 1767, 152

L.Ed.2d at 895 (citing *Argersinger v. Hamlin,* 407 U.S. 25, 40, 92 S.Ct. 2006, 2014, 32 L.Ed.2d 530, 540 (1972)).[3] The Supreme Court explained:

A suspended sentence is a prison term imposed for the offense of conviction. Once the prison term is triggered, the defendant is incarcerated not for the probation violation, but for the underlying offense. The uncounseled conviction at that point "result[s] in imprisonment . . .;" it "ends up in the actual deprivation of a person's liberty."

*Shelton,* 535 U.S. at 662, 122 S.Ct. at 1770, 152 L.Ed.2d at 898 (citing *Nichols v. United States,* 511 U.S. 738, 746, 114 S.Ct. 1921, 1927, 128 L.Ed.2d 745, 754 (1994) and *Argersinger,* 407 U.S. at 40, 92 S.Ct. at 2014, 32 L.Ed.2d at 540).

The Supreme Court asserted that two prior decisions, *Argersinger* and *Scott v. Illinois,* 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979), controlled its decision in *Shelton.* 535 U.S. at 657, 122 S.Ct. at 1767, 152 L.Ed.2d at 895. In *Argersinger* the Supreme Court held "that absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at trial." 407 U.S. at 37, 92 S.Ct. at 2012, 32 L.Ed.2d at 538 (clarifying the scope of *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), in which the Supreme Court held that the Sixth Amendment's guarantee of the right of an indigent defendant to appointed counsel applies to state criminal prosecutions through the Fourteenth Amendment). Then in *Scott,* the Supreme Court noted "the central premise of *Argersinger*— that actual imprisonment is a penalty different in kind from fines or the mere threat of imprisonment—is eminently sound and warrants adoption of actual imprisonment as the line defining the constitutional right to appointment of counsel." 440 U.S. at 373, 99 S.Ct. at 1162, 59 L.Ed.2d at 389. The Supreme Court found the constitutional right to counsel does not apply when a prison term is an authorized punishment but not actually imposed. *Id.* at 369, 99 S.Ct. at 1160, 59 L.Ed.2d at 386.

---

**3.** The defendant in *Shelton* was convicted of a misdemeanor; was sentenced to thirty days' imprisonment, which was immediately suspended; and was placed on unsupervised probation for two years.

■ Although the Supreme Court in *Shelton* found the *Argersinger–Scott* "actual imprisonment" rule controlling, "the fact that a court says that its decision is within the 'logical compass' of an earlier decision, or indeed that it is 'controlled' by a prior decision, is not conclusive for purposes of deciding whether the current decision is a 'new rule' under *Teague*." *Butler v. McKellar*, 494 U.S. 407, 415, 110 S.Ct. 1212, 1217, 108 L.Ed.2d 347, 356 (1990). Precedent prior to *Shelton* established that a defendant was entitled to the constitutional right to counsel when the defendant received a sentence "that end[s] up in the actual deprivation of a person's liberty." *Argersinger*, 407 U.S. at 40, 92 S.Ct. at 2014, 32 L.Ed.2d at 540. However, the *Shelton* decision required counsel to be appointed when an indigent defendant received a sentence that "*may* end up in the actual deprivation of a person's liberty." *Shelton*, 535 U.S. at 658, 122 S.Ct. at 1767, 152 L.Ed.2d at 895 (internal quotation omitted) (emphasis added). *Shelton's* extension of the right to counsel was a new rule under *Teague* because it was not dictated by precedent existing at the time of Respondent's convictions. *See also Howard v. United States*, 374 F.3d 1068, 1074–77 (11th Cir.2004) (finding *Shelton* announced a new rule under *Teague*).

■ Generally, new procedural rules should be not applied retroactively to cases on collateral review, unless the new rule falls within one of two exceptions to the general rule. *Teague*, 489 U.S. at 305, 310, 109 S.Ct. at 1072, 103 L.Ed.2d at 352, 356. The first exception is when the rule "places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." *Id.* at 311, 109 S.Ct. at 1075, 103 L.Ed.2d at 356 (internal quotation omitted). The second exception is when the rule "requires the observance of those procedures that . . . are implicit in the concept of ordered liberty." *Id.* at 311, 109 S.Ct. at 1076, 103 L.Ed.2d at 356 (internal quotations omitted). The second exception is "reserved for watershed rules of criminal procedure" which implicate the fundamental fairness and accuracy of the proceeding. *Id.*

The first exception is not applicable to the present situation. The Supreme Court has repeatedly cited *Gideon* as illustrative of the type of new rule which falls within the second exception in *Teague*. *See, e.g., Beard v. Banks*, 542 U.S. 406, 124 S.Ct.

2504, 159 L.Ed.2d 494 (2004) (recognizing the right to counsel announced in *Gideon* as an example of the second *Teague* exception); *Saffle v. Parks*, 494 U.S. 484, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990) (same); *Teague*, 489 U.S. at 311–312, 109 S.Ct. at 1075–76, 103 L.Ed.2d at 357 (same). The Supreme Court also has applied each extension of the constitutional right to counsel retroactively to collateral proceedings. We conclude the new rule announced by *Shelton* is a watershed rule of criminal proceeding because the right to counsel undeniably implicates the fundamental fairness and accuracy of the proceeding. *See Howard*, 374 F.3d at 1077–80 (collecting authority which supports retroactive application of every extension of right to counsel on collateral review but noting these decisions were decided prior to *Teague* and concluding *Shelton* fell within the second *Teague* exception because of "the sheer importance of the right to counsel").

■ Because *Shelton* applies retroactively on collateral review, the PCR judge correctly determined S.C.Code Ann. 17–27–45(B) is the applicable statute of limitations. *Shelton* was decided on May 20, 2002, and Respondent filed his PCR application on March 6, 2003. Respondent's PCR application was timely filed under 17–27–45(B).

■ Although Respondent timely filed his PCR application and *Shelton* applies retroactively on collateral review, we conclude the rule announced in *Shelton* does not apply to Respondent's convictions. Respondent only paid a fine for his conviction in 1995. A fine for an uncounseled misdemeanor conviction is valid, and Respondent did not have a constitutional right to counsel for this conviction. *See Scott*, 440 U.S. at 373–74, 99 S.Ct. at 1162, 59 L.Ed.2d at 389. Accordingly, the PCR judge erred in vacating the 1995 conviction.

■ Respondent received thirty days' imprisonment, which was immediately suspended and conditioned on six months' good behavior, and was fined $940 for his 1996 conviction. In South Carolina, a magistrate cannot lawfully place a person on probation. A magistrate can, however, lawfully suspend a sentence and impose conditions. *See* S.C.Code Ann. § 22–3–800 (Supp.2005) ("Notwithstanding the limitations of Sections 17–25–100 and 24–21–410, after a conviction or plea for an offense within a magistrate's jurisdiction

the magistrate at the time of sentence may suspend the imposition or execution of a sentence upon terms and conditions the magistrate considers appropriate. . . . Nothing in this section may be construed to give a magistrate the right to place a person on probation."). Although a magistrate has the statutory authorization to suspend sentences and impose conditional sentences, we note the enforcement of substantive conditions as part of a suspended sentence may implicate a defendant's right to counsel as required by *Argersinger, Scott,* and *Shelton.* In this case, the magistrate's condition of six months' good behavior was effectively probation, and accordingly, the probation was an illegal sentence. We vacate that portion of Respondent's sentence for his 1996 conviction.[4]

Therefore, Respondent lawfully received a prison sentence that was immediately suspended and a fine for his 1996 conviction. If a defendant receives only an immediately suspended sentence without probation, there is absolutely no possibility the defendant will ever be incarcerated for the underlying conviction. As such, the prison term for the underlying conviction will never be triggered, and the defendant has not received a sentence that "may 'end up in the actual deprivation of a person's liberty.'" *Shelton,* 535 U.S. at 658, 122 S.Ct. at 1767, 152 L.Ed.2d at 895 (citing *Argersinger,* 407 U.S. at 40, 92 S.Ct. at 2014, 32 L.Ed.2d at 540). Because Respondent received an immediately suspended sentence and a fine, we conclude the federal constitutional right to counsel did not apply to Respondent's conviction in 1996 and the PCR judge erroneously ruled Respondent's conviction was invalid under *Shelton.*

### CONCLUSION

We reverse the PCR judge's decision to vacate Respondent's convictions and uphold those convictions. We need not reach the remaining issue on appeal. *See Hagood v. Sommerville,* 362 S.C. 191, 199, 607 S.E.2d 707, 711 (2005) (appellate

---

4. The dissent relies on dicta in *Richards v. Crump,* 260 S.C. 133, 194 S.E.2d 575 (1973), to allege that a suspended sentence conditioned on good behavior is independent of probation. The issue in *Richards* was whether a magistrate could lawfully impose consecutive sentences, and in that context, the *Richards* Court differentiated between consecutive and suspended sentences.

court need not address remaining issues when resolution of prior issue is dispositive).

**REVERSED.**

TOAL, C.J., MOORE and WALLER, JJ., concur.

PLEICONES, J., dissenting in a separate opinion.

Justice PLEICONES dissenting:

I agree with the majority that *Alabama v. Shelton,* 535 U.S. 654, 122 S.Ct. 1764, 152 L.Ed.2d 888 (2002) should be applied retroactively, and I agree that decision affords Respondent no relief on his 1995 conviction. I disagree, however, with the majority's conclusion that the 1996 sentence was, at least in part, illegal and would affirm the grant of post-conviction relief (PCR) to Respondent on that conviction.

The majority holds, and I agree, that a magistrate cannot lawfully place a criminal defendant on probation. *See* S.C.Code Ann. § 22–3–800 (1989) ("Nothing in this section may be construed to give a magistrate the right to place a person on probation"). Here, the magistrate did not place Respondent on probation but instead suspended his sentence, conditioned on six months good behavior. Such a suspension is explicitly authorized by § 22–3–800: "[T]he magistrate at the time of sentence may suspend the imposition or execution of a sentence upon terms and conditions the magistrate considers appropriate...." A suspended sentence conditioned upon good behavior "is independent of the Probation and Parole Statutes and suspension of sentences therein provided...." *Richards v. Crump,* 260 S.C. 133, 194 S.E.2d 575 (1973).[5] I find nothing illegal about the 1996 sentence [6] and

---

**5.** I note that in *Richards* the parties conceded that a magistrate could not suspend sentences and thus it does not support the majority's holding that a magistrate lacks this authority. I note as well that the opinion makes no mention of § 43–67.1, the predecessor to § 22–3–800 then in effect.

**6.** In my view, if in fact the original sentence were unlawful, then the suspension would be a nullity and Respondent would be required to serve the original thirty day sentence. As such, the 1996 conviction was obtained in violation of *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), and PCR was properly granted.

conclude that it was obtained in violation of the rule in *Alabama v. Shelton.*

I therefore concur in part and dissent in part.