777 S.E.2d 409

**Ken LUCERO, Respondent,**

v.

**STATE of South Carolina, Petitioner.**

**Appellate Case No. 2012–213130.**

**No. 5352.**

Court of Appeals of South Carolina.

Heard June 2, 2015.

Decided Sept. 9, 2015.

Rehearing Denied Oct. 23, 2015.

---

240

Attorney General, Alan McCrory Wilson and Assistant Deputy Attorney General, David A. Spencer, both of Columbia, for petitioner.

Eleanor Duffy Cleary, of Cleary Law LLC, of Columbia, for respondent.

## ON WRIT OF CERTIORARI.

KONDUROS, J.

In this post-conviction relief (PCR) action, the State argues the PCR court erred in finding *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), applied retroactively and granting Ken Lucero's application for PCR. The State also contends the PCR court erred in denying its motion to dismiss on the basis that the application was barred by the statute of limitations and laches. We reverse.

## FACTS

Lucero was born in Ecuador, moved to the United States in 1993, and became a "permanent resident alien" in 2000. On June 6, 2002, she was traveling in a rental car from New York City, where she lived, to Orlando, Florida, when police executed a traffic stop in Dorchester County, South Carolina. According to Lucero, because she did not speak English, she was unsure why police stopped her. Police searched her vehicle and found heroin in the trunk, but she asserted she had never seen heroin or transported it for other people.

The State indicted Lucero for trafficking heroin in an amount more than one hundred grams but less than two hundred grams. In November 2002, she pled guilty to the lesser included offense of possession of heroin, and the plea court sentenced her to two years' imprisonment suspended on three years' probation.[1] Lucero did not file a direct appeal. In February 2011, an immigration judge ordered Lucero removed to Ecuador due to her conviction.

On April 14, 2011, Lucero filed an application for PCR alleging ineffective assistance of counsel based on *Padilla* because plea counsel failed to inform her of the possibility of deportation due to her conviction. At the PCR hearing, Lucero testified she met with plea counsel on three occasions and plea counsel never informed her of the possibility of deportation. She testified she would not have pled guilty if she knew she could be deported.

The State argued Lucero's application was barred by the statute of limitations because she pled guilty in 2002, never filed a direct appeal, and filed her PCR application in 2011, in excess of the one-year statute of limitations for PCR. The State claimed *Padilla* was not retroactive; therefore, her application was "far beyond the [one-year] statute of limitations." Alternatively, the State argued even if *Padilla* was retroactive, Lucero's application was still barred by the statute of limitations because she waited more than one year from the day the Supreme Court issued *Padilla*. The State also claimed the doctrine of laches barred Lucero's application.

---

1. The appendix does not contain a transcript of the guilty plea hearing because court administration maintains court reporter records for only five years.

The PCR court found Lucero was entitled to PCR and vacated her conviction. Initially, the PCR court determined Lucero's application fell within the one-year statute of limitations provided under section 17–27–45(B) of the South Carolina Code (2014) because *Padilla* was " 'intended to be applied retroactively.' " Further, the PCR court ruled the one-year statute of limitations contained in section 17–27–45(B) begins from the day the Supreme Court issues its "mandate" because "[t]his is analogous to the state court's issuing of the remittitur under Rule 221, SCACR." The PCR court explained because the Supreme Court issued its mandate for *Padilla* on May 3, 2010, Lucero's application, filed on April 14, 2011, was within one year of *Padilla* becoming final. Finally, the PCR court found the doctrine of laches did not bar Lucero's application because "the severe consequences of [Lucero] being deported outweigh any prejudice caused to the [S]tate by trying this case."

The State filed a petition for writ of certiorari from the grant of Lucero's application for PCR. This court granted the petition.

## STANDARD OF REVIEW

On review, we will uphold a PCR court's findings if any evidence of probative value supports them. *Simuel v. State*, 390 S.C. 267, 270, 701 S.E.2d 738, 739 (2010). "This [c]ourt will reverse the PCR [court]'s decision when it is controlled by an error of law." *Suber v. State*, 371 S.C. 554, 558–59, 640 S.E.2d 884, 886 (2007). We "give[ ] great deference to the PCR court's findings of fact and conclusions of law." *Porter v. State*, 368 S.C. 378, 383, 629 S.E.2d 353, 356 (2006).

## LAW/ANALYSIS

The State argues the PCR court erred by finding *Padilla* applied retroactively. Specifically, the State claims the ruling in *Padilla* was a "new rule" under *Teague*[2] because it applied the ineffective assistance of counsel analysis from *Strickland*[3] for the first time to decide whether plea counsel's

2. *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

3. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

failure to inform a defendant about deportation consequences constituted ineffective assistance. According to the State, because *Padilla* was a "new rule," it does not apply retroactively and the PCR court should have dismissed Lucero's application as barred by the statute of limitations. The State further asserts *Padilla's* ruling was not a watershed rule of criminal procedure. We agree.

"In a PCR proceeding, the applicant bears the burden of establishing that he or she is entitled to relief." *Lomax v. State*, 379 S.C. 93, 100, 665 S.E.2d 164, 167 (2008). "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction ... has two components." *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. "The defendant must first demonstrate that counsel was deficient and then must also show the deficiency resulted in prejudice." *Walker v. State*, 407 S.C. 400, 404–05, 756 S.E.2d 144, 146 (2014). "There is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions in the case." *Morris v. State*, 371 S.C. 278, 282, 639 S.E.2d 53, 55 (2006). "The two-part test adopted in *Strickland* also applies to challenges to guilty pleas based on ineffective assistance of counsel." *Holden v. State*, 393 S.C. 565, 572, 713 S.E.2d 611, 615 (2011) (internal quotation marks omitted).

"To satisfy the first prong, a defendant must show counsel's performance fell below an objective standard of reasonableness." *Walker*, 407 S.C. at 405, 756 S.E.2d at 146 (internal quotation marks omitted). "To prove prejudice, an applicant must show there is a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different." *Id.* (internal quotation marks omitted). To prove prejudice in the context of a guilty plea, an applicant must show that but for counsel's errors, there is a reasonable probability the applicant would not have pled guilty and would have insisted on going to trial. *Roscoe v. State*, 345 S.C. 16, 20, 546 S.E.2d 417, 419 (2001).

In *Padilla*, 559 U.S. at 360, 130 S.Ct. 1473, the Supreme Court addressed whether plea counsel must inform his or her client of the risk of deportation associated with a potential guilty plea. The Supreme Court explained:

It is our responsibility under the Constitution to ensure that no criminal defendant—whether a citizen or not—is left to the mercies of incompetent counsel. To satisfy this responsibility, we now hold that counsel must inform her client whether his plea carries a risk of deportation. Our long-standing Sixth Amendment precedents, the seriousness of deportation as a consequence of a criminal plea, and the concomitant impact of deportation on families living lawfully in this country demand no less.

*Id.* at 374, 130 S.Ct. 1473 (citation and internal quotation marks omitted). Further, to be effective, counsel must inform a defendant whether his or her plea carries a risk of deportation because it is a critical factor when deciding whether to plead guilty or proceed to trial. *Hamm v. State*, 403 S.C. 461, 463 n. 1, 744 S.E.2d 503, 504 n. 1 (2013).

The Supreme Court has found the retroactivity of federal criminal procedure decisions "turn[s] on whether they are novel," i.e., whether they constitute a "new rule." *Chaidez v. United States*, —— U.S. ——, 133 S.Ct. 1103, 1107, 185 L.Ed.2d 149 (2013). When the Supreme Court announces a " 'new rule,' a person whose conviction is already final may not benefit from the decision in a habeas or similar proceeding." *Id.* "Only when [the Supreme Court] appl[ies] a settled rule may a person avail herself of the decision on collateral review." *Id.* "A case announces a new rule ... when it breaks new ground or imposes a new obligation on the government" or "if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Id.* (brackets omitted) (internal quotation marks omitted). A case does not announce a new rule when it is "merely an application of the principle that governed a prior decision to a different set of facts." *Id.* (internal quotation marks omitted). In *Chaidez*,[4] the Supreme Court found *Padilla* announced a "new rule" because its "holding that the failure to advise about a non-criminal consequence could violate the Sixth Amendment would not have been ... 'apparent to all reasonable jurists' prior to [*Padilla* ]." *Id.* at 1111. Accordingly, the Supreme Court found *Padilla* did not apply retroactively and "defen-

---

4. The Supreme Court decided *Chaidez* on February 20, 2013, after the PCR court issued its order on July 31, 2012.

dants whose convictions became final prior to *Padilla* therefore cannot benefit from its holding." *Id.* at 1107, 1113.

Our supreme court has acknowledged the Supreme Court's decision in *Chaidez*. *See Hamm*, 403 S.C. at 465 n. 4, 744 S.E.2d at 505 n. 4 ("[T]he [Supreme Court] held *Padilla* announced a new rule; therefore, the Court concluded it does not apply retroactively."). Additionally, the *Hamm* court found a PCR applicant "failed to file a PCR application raising any issue related to *Padilla* within one year of that decision, issued March 31, 2010, as required by section 17–27–45 of the South Carolina Code." *Id.* at 464, 744 S.E.2d at 504 (citing S.C.Code Ann. § 17–27–45(B) (2014)).

Despite its decisions addressing and applying retroactivity of "new" constitutional criminal procedure rules, the Supreme Court has also decided individual states are free to provide constitutional protections in excess of the minimum required by the Constitution. *See Danforth v. Minnesota*, 552 U.S. 264, 288, 128 S.Ct. 1029, 169 L.Ed.2d 859 (2008). Specifically, the Supreme Court concluded "the remedy a state court chooses to provide its citizens for violations of the Federal Constitution is primarily a question of state law. Federal law simply sets certain minimum requirements that States must meet but may exceed in providing appropriate relief." *Id.* (internal quotation marks omitted).[5,6] In *Aiken v. Byars*, our

---

5. In *Talley v. State*, decided prior to *Danforth*, our supreme court found "[i]n determining whether Respondent was deprived of his federal constitutional right to counsel, we are *required* to follow the ... Supreme Court's decisions on retroactivity." 371 S.C. 535, 541, 640 S.E.2d 878, 880 (2007) (emphasis added) (citing *Am. Trucking Ass'ns v. Smith*, 496 U.S. 167, 178, 110 S.Ct. 2323, 110 L.Ed.2d 148 (1990) (plurality opinion)). However, in *Danforth*, the Supreme Court discussed *American Trucking* and concluded that decision did not require states to follow the Supreme Court's decisions on retroactivity. 552 U.S. at 284–88, 128 S.Ct. 1029.

6. Some states have taken advantage of the authority provided by the Supreme Court in *Danforth*. *See State v. Smart*, 202 P.3d 1130, 1136 (Alaska 2009) (citing *Danforth* and indicating a state test for determining whether a new decision was retroactive was appropriate "so long as the state test is at least as comprehensive as the federal test"); *Commonwealth v. Sylvain*, 466 Mass. 422, 995 N.E.2d 760, 762 (2013) ("We conclude, as a matter of Massachusetts law and consistent with our authority as provided in *Danforth* ... that the Sixth Amendment right enunciated in *Padilla* was not a 'new' rule and, consequently, defen-

supreme court noted it "ha[d] not addressed whether it should employ a more expansive analysis for determining retroactivity after *Danforth* ..., which held that state courts can use a broader test than *Teague*." 410 S.C. 534, 539 n. 4, 765 S.E.2d 572, 575 n. 4 (2014) (citing *Danforth*, 552 U.S. at 282, 128 S.Ct. 1029 (holding *Teague* "does not in any way limit the authority of a state court, when reviewing its own state criminal convictions, to provide a remedy for a violation that is deemed 'nonretroactive' under *Teague*")). The supreme court found "it unnecessary to [determine whether to use a broader test in that case] because [the new rule] is clearly retroactive under *Teague*." *Id.*

Since the supreme court's ruling in *Chaidez* that *Padilla* is not retroactive, states have split over whether to apply *Padilla* retroactively in their state. However, states all seem to rely on the determination of whether *Padilla* created a new right in their state. The states that have found *Padilla* applies retroactively point to their state's prior case law, statutes, rules, or expected attorney practices requiring attorneys to advise their clients of deportation consequences when pleading guilty. *See, e.g., Sylvain*, 995 N.E.2d at 770–71 ("We conclude that *Padilla* did not announce a 'new' rule for the purposes of our retroactivity test under *Bray* .... *Padilla* did not announce a 'new' rule for the simple reason that it applied a general standard—designed to change according to the evolution of existing professional norms—to a specific factual situation. We also are not persuaded that Massachusetts precedent at the time *Padilla* was decided would have dictated an outcome contrary to that in *Padilla*. Indeed, long before *Padilla* was decided, it was customary for practitioners in Massachusetts to warn their clients of the possible deportation consequences of pleading guilty." (citation omitted)); *Ramirez v. State*, 333 P.3d 240, 243 (N.M.2014) ("We decline to follow *Chaidez* ... because since 1990, the New Mexico Supreme Court rules and forms have required an attorney to certify

---

dants whose [s]tate law convictions were final ... may attack their convictions collaterally on *Padilla* grounds."); *People v. Maxson*, 482 Mich. 385, 759 N.W.2d 817, 821–22 (2008) ("The conclusion that [a case] is not retroactive under federal law does not end our analysis, however. A state may accord broader effect to a new rule of criminal procedure than federal retroactivity jurisprudence accords." (citing *Danforth*, 552 U.S. at 282–88, 128 S.Ct. 1029)).

having engaged the client in detail in a guilty plea colloquy that included immigration consequences. Because the requirements that Form 9406 imposes are not new in New Mexico, our holding in *Paredez* imposing requirements that were effective in 1990 applies retroactively to 1990, the adoption date of the Form 9–406 amendment that required a defendant to understand the possible immigration consequences of a plea conviction.").

 The states that have not applied *Padilla* retroactively have found *Padilla* recognizes a new right, one that was not previously recognized in their state. *See Miller v. State*, 435 Md. 174, 77 A.3d 1030, 1044–45 (2013) ("The issue before us in the instant case, thus, becomes whether Miller's claims of involuntariness or ineffective assistance of counsel resulting from his failure to be advised of the adverse immigration consequences of his plea had independent state bases in Maryland in 1999. When queried on this point at oral argument, Miller's counsel could not identify any such state bases for affording Miller relief, because there are none. . . . By 1999, moreover, even after we adopted Rule 4–242(e), which mandated a trial court inform a defendant of the possibility of adverse immigration consequences, we further articulated that the failure to so advise a defendant did not itself mandate that the plea be declared invalid. The Rules Commentary acknowledged that the new Rule 4–242(e) did not overrule *Daley v. State*, in which the Court of Special Appeals held that the failure to advise of adverse immigration consequences did not render a guilty plea involuntary because possible deportation is merely collateral to his guilty plea, because it arises from a separate civil proceeding and, under immigration law at that time, deportation was not definite nor largely automatic." (citations and internal quotation marks omitted)); *People v. Baret*, 23 N.Y.3d 777, 992 N.Y.S.2d 738, 16 N.E.3d 1216, 1230–31 (2014) ("In 1995 we held in *Ford* that defense counsel were not under a duty to warn defendants of the possible deportation consequences before entering a guilty plea; and, stated another way, that the failure of counsel to warn defendant of the possibility of deportation [did not] constitute ineffective assistance of counsel. Thus, *Padilla* flatly contradicted and supplanted *Ford's* holding as to whether defense attorneys were obligated to advise their noncitizen clients about the

immigration consequences of a guilty plea. We agree with Justice Kagan that '[i]f [this] does not count as break[ing] new ground or impos[ing] a new obligation, we are hard pressed to know what would.' Thus, *Padilla* created a new rule of federal constitutional criminal procedure in New York which, consistent with *Teague* and *Eastman,* does not apply retroactively in CPL 440.10 proceedings." (alterations by court) (citations and internal quotation marks omitted)); *State v. Alshaif,* 219 N.C.App. 162, 724 S.E.2d 597, 603 (2012) ("Persuaded by the reasoning of *Chang Hong,* we conclude that *Padilla* announced a new rule. Prior to *Padilla,* neither our state courts nor federal courts had interpreted *Strickland* as requiring counsel to advise a client of the immigration consequences of a guilty plea. We are aware that *Strickland* is a fact-specific test, and must naturally evolve over time as practical norms and underlying legal consequences change. However, we find that *Padilla* was an application of *Strickland* that would have been unreasonable to expect attorneys to have foreseen—especially those attorneys unfamiliar with immigration law. We therefore hold that *Padilla* announced a new rule." (citations omitted)); *State v. Garcia,* 834 N.W.2d 821, 823–26 (S.D.2013) ("This Court, however, has previously deemed the *Teague* rule to be unduly narrow as to what issues it will consider on collateral review. We opined that [w]hile the substance of what is to be applied is a federal constitutional matter, the decision on what criteria to use to determine prospective or retroactive application is a nonconstitutional state decision. Accordingly, we use the following criteria to determine whether a particular decision should be given [retroactive] effect [in South Dakota]: (1) The purpose of the decision, (2) reliance on the prior rule of law, and (3) the effect upon the administration of justice. Thus, while the trial court relied on the *Teague* factors in its analysis of the *Padilla* decision, we adhere to the *Cowell* precedent in analyzing whether *Padilla* applies retroactively.... At the time of Garcia's guilty plea in 2004, this Court had not yet addressed whether the failure to advise a defendant of the risk of deportation amounted to ineffective assistance of counsel. In our 2005 decision in *Nikolaev v. Weber,* we held that the overwhelming majority of courts to have addressed the question have held that deportation is a collateral consequence of

the criminal process, and hence that, nothing else appearing, the failure to advise the defendant of the possibility of deportation does not amount to ineffective assistance of counsel. Subsequently, we denied Nikolaev relief on the same basis. Accordingly, the rule of law pronounced in *Nikolaev* in 2005 was exactly the opposite of the rule announced in *Padilla* in 2010. . . . In weighing the three *Cowell* criteria together, we will not apply the United States Supreme Court's decision in *Padilla* retroactively to cases that were decided prior to *Padilla.*" (all alterations by court except last two) (citations and internal quotation marks omitted)); *see also Thiersaint v. Comm'r of Corr.,* 316 Conn. 89, 111 A.3d 829, 848 (2015) ("Thus, by describing the holding in *Padilla* as an extension of *Strickland,* which was not a new rule, the court in *Sylvain* ignored the fact that the question of whether attorneys are *constitutionally required* to advise noncitizen criminal defendants of the deportation consequences of a guilty plea had never been addressed before *Padilla.* The court in *Sylvain* also ignored the fact that the ruling in *Padilla* was grounded in a legal analysis of the direct and indirect consequences of a plea, and that the court in *Padilla* had examined prevailing professional norms under the performance prong of *Strickland* only *after* resolving the threshold constitutional question of whether the rule applied in that case. We thus dismiss the reasoning in *Sylvain* because it fails to recognize that the rule announced in *Padilla* was new, and not merely an extension of the rule articulated in *Strickland.*" (footnote and citation omitted)).

> Generally, new procedural rules should [not be] applied retroactively to cases on collateral review, unless the new rule falls within one of two exceptions to the general rule. The first exception is when the rule "places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." The second exception is when the rule "requires the observance of those procedures that . . . are implicit in the concept of ordered liberty." The second exception is "reserved for watershed rules of criminal procedure" which implicate the fundamental fairness and accuracy of the proceeding.

*Talley v. State,* 371 S.C. 535, 543, 640 S.E.2d 878, 882 (2007) (second alteration by court) (quoting *Teague,* 489 U.S. at 305, 310–11, 109 S.Ct. 1060).

Lucero argues that although *Padilla* created a new rule, South Carolina should apply it retroactively because it is a watershed rule of criminal procedure, which implicates the fundamental fairness and accuracy of the proceeding. We find it is not a watershed rule.

The Idaho Court of Appeals has noted, "We are aware of no court that has found that *Padilla* applies retroactively under *Teague's* watershed exception." *Gutierrez–Medina v. State,* 157 Idaho 34, 333 P.3d 849, 853 (Ct.App.2014). "The Tenth Circuit Court of Appeals addressed the question in *United States v. Chang Hong,* 671 F.3d 1147 (10th Cir.2011), after determining (pre-*Chaidez* ) that *Padilla* established a new rule of criminal procedure." *Id.* (footnote omitted). "The [*Chang Hong* ] court first noted the Supreme Court has not hesitated to hold that less sweeping and fundamental rules than *Gideon* do not fall within *Teague's* second exception." *Id.* The *Chang Hong* court determined *Padilla* did not announce a watershed rule of criminal procedure:

> Simply put, *Padilla* is not *Gideon.* *Padilla* does not concern the fairness and accuracy of a criminal proceeding, but instead relates to the deportation consequences of a defendant's guilty plea. The rule does not affect the determination of a defendant's guilt and only governs what advice defense counsel must render when his noncitizen client contemplates a plea bargain. *Padilla* would only be at issue in cases where the defendant admits guilt and pleads guilty. In such situations, because the defendant's guilt is established through his own admission—with all the strictures of a Rule 11 plea colloquy—*Padilla* is simply not germane to concerns about risks of inaccurate convictions or fundamental procedural fairness.

*Chang Hong,* 671 F.3d at 1158.

The Minnesota Supreme Court has also found *Padilla* did not create a watershed rule. *Campos v. State,* 816 N.W.2d 480, 498 (Minn.2012).

> Requiring counsel to inform his noncitizen client of the immigration consequences of a guilty plea does not decrease

the risk of an inaccurate conviction. *Padilla* is only implicated "in cases where the defendant admits guilt and pleads guilty." *Chang Hong,* 671 F.3d at 1158. In such cases, "because the defendant's guilt is established through his own admission ... *Padilla* is simply not germane to concerns about risks of inaccurate convictions or fundamental procedural fairness." *Id.* Moreover, *Padilla's* holding, unlike the expansive rule in *Gideon* establishing a right to counsel in all felony cases, affects only a small subset of defendants, indicating that the rule does not have a fundamental and profound impact on criminal proceedings generally.

*Campos,* 816 N.W.2d at 498–99 (alteration by court) (citing *United States v. Mandanici,* 205 F.3d 519, 528 (2d Cir.2000) (explaining that a watershed rule must institute "a sweeping change that applies to a large swathe of cases rather than a narrow right that applies only to a limited class of cases" (internal quotation marks omitted)); *Ellis v. United States,* 806 F.Supp.2d 538, 549 (E.D.N.Y.2011) (concluding that the rule announced in *Padilla* was not a watershed rule because "the rule has nothing to do with the accuracy of a defendant's conviction," applied "a relatively narrow holding," and "only applies to a limited class of defendants—noncitizen defendants who face charges that carry with them immigration consequences")).

In *Gutierrez–Medina,* 333 P.3d at 857, the appellant contended "because Idaho has a broader statutory right to counsel than is imposed by the federal Constitution, a lower threshold for finding *Padilla* is a watershed rule should be applicable in this case." The court found the appellant was "correct that in some instances, Idaho's statutory right to counsel is more expansive than the federal right to counsel." *Id.* "It does not automatically follow, however, that this distinction supports a finding that *Padilla* announced a watershed rule. As we noted above, despite our Supreme Court's adoption of a modified approach to *Teague,* the fundamental questions inherent in that analysis are still applicable." *Id.* "It still stands that in order to be considered a watershed rule, a procedural rule must be one without which the likelihood of

an accurate conviction is *seriously* diminished." *Id.* The court found the appellant made "no argument that without the *Padilla* rule, the likelihood of accurate convictions was seriously diminished." *Id.* The court "agree[d] with the numerous jurisdictions . . . that have explicitly concluded that *Padilla* is simply not germane to concerns about risks of inaccurate convictions given that it does not affect the determination of a defendant's guilt." *Id.* (internal quotation marks omitted).

The PCR court erred by ruling *Padilla* was retroactive in South Carolina. *See Suber v. State*, 371 S.C. 554, 558–59, 640 S.E.2d 884, 886 (2007) ("This [c]ourt will reverse the PCR [court]'s decision when it is controlled by an error of law."). The Supreme Court determined *Padilla* was not retroactive for a collateral attack on a conviction in a federal proceeding. *Chaidez*, 133 S.Ct. at 1113. However, the Supreme Court also explicitly ruled a remedy in state court for a violation of the Federal Constitution is primarily a question of state law so long as the state law remedy meets the "minimum requirements" of the Federal Constitution. *Danforth*, 552 U.S. at 288, 128 S.Ct. 1029. Because of the Supreme Court's decision in *Danforth*, our supreme court's ruling in *Talley*, 371 S.C. at 541, 640 S.E.2d at 880, that "we are required to follow the . . . Supreme Court's decisions on retroactivity" is no longer accurate. As such, our state is not required to follow the Supreme Court's holding in *Chaidez*. Therefore, we must determine whether *Padilla* will be retroactive for purposes of collateral attacks in state PCR proceedings.[7]

We found no South Carolina case, statute, or rule requiring an attorney to advise a client of the deportation consequences that could arise from his or her guilty plea. Accordingly, *Padilla* created a new rule in South Carolina. *Padilla* did not provide for a right to counsel in a situation in which one had

---

7. In *Hamm*, 403 S.C. at 465, 465 n. 4, 744 S.E.2d at 505, 505 n. 4, the court noted *Padilla* was not retroactive due to the Supreme Court's decision in *Chaidez*. However, our supreme court's explanation of *Chaidez* was in dicta and did not discuss or make any findings with regard to whether *Padilla* was retroactive under state law and section 17–27–45(B) and made no mention of the Supreme Court's ruling in *Danforth*. *Id.* Thus, our supreme court's decision in *Hamm* did not clearly determine whether *Padilla* is retroactive under state law.

not previously been entitled to it. It simply added a new type of advice counsel should give. *Padilla* does not raise any concern about risks of inaccurate convictions or fundamental procedural fairness because a defendant has admitted guilt. *See Talley*, 371 S.C. at 544, 640 S.E.2d at 882 (finding a new rule was "a watershed rule of criminal proceeding because the right to counsel undeniably implicates the fundamental fairness and accuracy of the proceeding"). Therefore, this rule is not a watershed rule.

Further, Lucero contends section 17–27–45(B) would be pointless if a new rule did not apply retroactively. However, she overlooks the part of the subsection that states "a substantive standard not previously recognized or a right not in existence at the time of the state court trial, *and if the standard or right is intended to be applied retroactively.*" The section clearly indicates the new rule must be intended to apply retroactively. For the reasons discussed above, the rule announced in *Padilla* should not apply retroactively in South Carolina. Therefore, the PCR court erred as a matter of law in finding *Padilla* applied retroactively in South Carolina.[8] Accordingly, the PCR's court granting of Lucero's PCR application is

**REVERSED.**

THOMAS and GEATHERS, JJ., concur.

---

8. The State also claims the PCR court erred by denying its motion to dismiss because Lucero's application was barred by the statute of limitations even if *Padilla* is retroactive because Lucero filed her application in excess of one year following the Supreme Court's release of the *Padilla* opinion because the one year time limit begins on the date the opinion is issued, not the date of its mandate. Additionally, it asserts the PCR court erred in denying its motion to dismiss based on the doctrine of laches. Based on our determination *Padilla* does not apply retroactively, we need not decide these issues. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).