No. 2--01--0747 

________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

________________________________________________________________

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court

OF ILLINOIS, ) of Kane County.

)

Plaintiff-Appellee, ) Nos. 95--CF--927, 

)     95--CF--1529,

v. )     96--CF--2143

) 

MARCO A. PEQUENO, ) Honorable

) Grant S. Wegner,  

Defendant-Appellant. ) Judge, Presiding.

________________________________________________________________

JUSTICE BYRNE delivered the opinion of the court:

Following plea negotiations, defendant, Marco A. Pequeno, pleaded guilty to unlawful possession of a controlled substance with intent to deliver (720 ILCS 570/401(c)(2) (West 1994)), aggravated criminal sexual abuse (720 ILCS 5/12--16(c)(1) (West 1994)), and domestic battery (720 ILCS 5/12--3.2(a) (2) (West 1996)).  The trial court entered judgments of conviction and sentenced defendant to 30 months' probation.  Defendant was deported as a result of the convictions.  Thereafter, defendant filed a postconviction petition to set aside his guilty pleas on grounds that his pleas were involuntary.  Specifically, defendant alleged that his counsel was ineffective for failing to properly advise him that he would be deported as a result of his convictions.  Defendant also alleged that the trial court erred in failing to admonish him that his guilty pleas could result in deportation.  The circuit court denied the petition following an evidentiary hearing.  It is from the order denying his postconviction petition that defendant now appeals to this court.  We affirm.  

BACKGROUND

Defendant was born in Mexico and had resided in the United States as a lawful alien since 1970, when he was 11 years old.  In 1995 and 1996, defendant was indicted for numerous offenses.  In 1996, defendant entered into an agreement with the Kane County State's Attorney's office to work as an informant for the Aurora police department in the investigation and prosecution of narcotics cases.  Defendant worked in this capacity for close to two years.  In exchange for his cooperation, the State agreed to dismiss numerous charges, and defendant was to receive probation for the current offenses.  Prior to the entry of his pleas, the trial court advised defendant of the consequences of his pleas in accordance with the requirements of Supreme Court Rule 402 (177 Ill. 2d R. 402).  The trial court did not advise defendant that pleading guilty could result in deportation.  On the "plea of guilty" form, next to an unmarked box is a statement that defendant understands that his plea of guilty could result in deportation if he is not a United States citizen.  Defendant did not thereafter appeal his convictions or file a motion to withdraw his guilty pleas. 

On January 31, 2000, defendant,
 
pro
 
se
, filed a petition
 for postconviction relief pursuant to the Post-Conviction Hearing Act (the Act) (725 ILCS 5/122--1 
et seq.
 (West 2000)), alleging that his counsel, Eduardo Gil, rendered ineffective assistance.  In the petition, defendant asked to have his guilty pleas set aside, alleging that, because he had been denied the effective assistance of counsel, the pleas were involuntary.  Defendant claimed that he would not have pleaded guilty had his attorney properly advised him of the immigration consequence of his guilty pleas.  Defendant attached an affidavit stating the following:

"My attorney was aware of my immigration status in this country.  I know this because I told him I was a non-citizen.  I asked him if accepting the plea agreement would affect my immigration status.  His response was that he did not know as he was not an immigration lawyer, and that I would have to check with one as he was a criminal defense attorney only.  At no time did he tell me that my pleas of guilty to the charges would result in my automatic deportation."

On December 22, 2000, defendant, now through appointed counsel, filed an amended petition for postconviction relief, in which he claimed that his counsel not only failed to advise him that he would be deported as a result of the convictions, but that counsel specifically advised defendant that he did not think the convictions would have any effect on defendant's immigration status.

The matter proceeded to an evidentiary hearing on June 27, 2001.  Defendant testified that in March 1997 he spoke with attorney Gil about what effect his guilty pleas would have on his immigration status.  Gil advised defendant that he did not know and that defendant would have to speak with an immigration attorney.  Defendant stated that, prior to signing the guilty plea form, Gil advised defendant of the penal consequences of his guilty pleas and that he had to register as a sex offender.  Gil also told defendant that, if he stayed out of trouble, he could go on with his life.  According to defendant, when he asked Gil if he was sure, Gil responded, "I don't think that you are going to have any immigration problems with it."  Defendant could recall only these two conversations concerning immigration.  Defendant conceded that he never consulted with an immigration attorney and that Gil never actually told defendant that he would not be deported; he  told defendant only that he did not think defendant would be deported.

Defendant further testified that he never saw an immigration lawyer because he "was more concerned with cooperating with the authorities and living up to the terms of [his] agreement."  Defendant stated that he was not guilty of aggravated criminal sexual abuse and that he  pleaded guilty to that charge only because he was facing the possibility of being sentenced to a significant amount of time in jail on all of the charges.  He had no idea that pleading guilty to this offense would result in his deportation.  Defendant stated that, if he had known this, he would not have pleaded guilty to any of the offenses and would have insisted on a jury trial.

Maribel Carde and Maria Pequeno testified that they talked with defense counsel after the pleas were entered and they learned that defendant was being deported.  They both stated that counsel told them that he did not know that defendant would be deported.

Gil testified that he practices criminal law, not immigration law.  He did not recall having any conversation with defendant regarding the effect that a finding of guilty would have on his immigration status, and he did not recall defendant ever asking him what effect a guilty plea would have on his immigration status.  Gil also could not remember any conversation with defendant where he told defendant that he was a criminal attorney and that defendant should consult an immigration attorney.  Gil testified that, on the day of defendant's pleas, he remembered discussing the pleas with defendant, particularly the judgments, sentences, and potential prison time.  However, he could not recall any conversation regarding immigration.

The trial court denied defendant's postconviction petition. The judge first concluded that, based on 
People v. Huante
, 143 Ill. 2d 61 (1991), counsel did not render ineffective assistance because immigration issues are collateral consequences and not direct consequences relating to the voluntariness of a plea.  The trial court added that, because counsel advised defendant to consult an immigration attorney, counsel did not render
 ineffective assistance.  Defendant timely appeals.

ANALYSIS

Defendant contends that he was denied the effective assistance of counsel
.  Initially, defendant argues that his counsel's representation was 
per
 
se
 ineffective.  Defendant points out that his counsel is an experienced criminal defense attorney, 98% of whose clientele consists of Hispanics.  Defendant asserts that, given his counsel's background and experience, his failure to know and inform defendant of the risk of deportation amounted to 
per
 
se
 ineffective representation.  We reject defendant's argument for several reasons.

First, an analysis for determining whether a defendant has been denied the effective assistance of counsel must begin with the standards set forth by 
Strickland v. Washington
, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984).  Under 
Strickland
, the 
defendant
 must establish both that his attorney's performance was deficient and that 
the
 
defendant
 suffered prejudice as a result.  
Strickland
, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064; see also 
Hill v. Lockhart
, 474 U.S. 52, 57, 88 L. Ed. 2d 203, 209, 106 S. Ct. 366, 369-70 (1985); 
Huante
, 143 
Ill.
 2d at 67-68 (
Strickland
 standard applicable to guilty pleas and postconviction challenges alleging ineffective assistance of counsel). 

Second, to satisfy 
the
 deficient-performance prong of 
Strickland
, a counsel's performance is measured by an objective standard of competence under prevailing professional norms.  
Strickland
, 466 U.S. at 688, 80 L. Ed. 2d at 693-94, 104 S. Ct. at 2064-65;
 
People v. Nunez
, 325 Ill. App. 3d 35, 42 (2001).  Our supreme court in 
Huante
 pointed out that, in cases involving guilty pleas, the standard for reasonableness depends on whether the advice was within the range of competence demanded of attorneys in criminal cases.  
Huante
, 143 Ill. 2d at 68-69.  Defendant's argument focuses on the specific knowledge and skills of 
his
 attorney rather than the objective standard of reasonable competence of criminal defense attorneys. 

Third, "[i]n measuring the reasonableness of an attorney's performance under the 
Strickland
 test, courts have emphasized the distinction between advising a defendant of the direct consequences of a guilty plea and of consequences such as deportation that arise collaterally from the plea."  
Huante
, 143 Ill. 2d at 69.  The supreme court in 
Huante
 saw no reason to part with this distinction and held that, in measuring the reasonableness of an attorney's performance under the objective standard set forth in 
Strickland
, an attorney has no duty to investigate and inform his client of the collateral consequences of a criminal conviction.  
Huante
, 143 Ill. 2d at 71-72.  We note that we are bound under principles of 
stare
 
decisis
 to follow the supreme court's decision (see 
Wreglesworth v. Arctco, Inc.
, 316 Ill. App.3d 1023, 1030 (2000)).  Accordingly, we cannot find that the failure to inform defendant of the immigration consequences of his guilty pleas was 
per
 
se
 ineffective
.

Defendant argues alternatively that
 his case is different from

Huante
.  Defendant points out that in 
Huante
 the court dealt with a situation where trial counsel simply did not advise the defendant of the collateral consequence of his pleas.  However, here, defendant specifically asked his attorney about the possibility of deportation on at least two occasions and he was given misleading advice that improperly assured him that his pleas would have no bearing on his immigration status.  Because his pleas resulted from "misinformation from his attorney" and this was "one of the factors underpinning his decision to plead guilty," defendant contends his case is similar to 
People v. Correa
, 108 Ill. 2d 541 (1985), in which the supreme court found that counsel rendered ineffective assistance to the defendant for incorrectly stating in response to his client's questions that the defendant would not be deported as a result of his guilty pleas.  
Correa
, 108 Ill. 2d at 550.  Defendant also finds his case similar to 
United States v. El-Nobani
, 
145 F. Supp. 2d 906 (N.D. Ohio 2001), wherein the court vacated the defendant's guilty plea because it resulted from the misleading statement that the defendant would not be deported after pleading guilty.  However, that decision was reversed in its entirety.  See 
El-Nobani v. United States
, 287 F.3d 417, 420-22 (6th Cir. 2002). 

In 
Correa
, the defendant, in considering a guilty plea, asked his plea counsel what effect his plea would have on his status as an immigrant.  Defense counsel replied that he was not sure, but, in his experience representing a number of aliens, none had been deported.  When the defendant told his counsel that his wife was an American citizen, counsel responded that he did not think the defendant had anything to worry about and, because he was married to an American citizen, he did not think that the defendant would be deported.  
Correa
, 108 Ill. 2d at 547-48.  The defendant was subsequently deported as a result of his guilty pleas.  The defendant argued that he was denied the effective assistance of counsel because his attorney specifically misrepresented to him the effect of his guilty pleas on his immigrant status.  
Correa
, 108 Ill. 2d at 544. 

The supreme court was concerned with the advice rendered to the defendant in response to the defendant's specific inquiry.  Although the court considered part of counsel's response to the defendant's inquiry to be equivocal, the statements made in response to learning that the defendant's wife was an American citizen were "positive and [could] only be interpreted as advice to the effect that the defendant's pleas would have no collateral deportation consequence."  
Correa
, 108 Ill. 2d at 550.  Thus, the "unequivocal, erroneous, and misleading representations that were made to defendant in response to his specific inquiry" led the court to hold that the defendant's pleas of guilty were not intelligently and knowingly made.  
Correa
, 108 Ill. 2d at 552-53. 

Defendant asserts that in the present case defense counsel told him in response to his inquiry, "I don't think that you are going to have any immigration problems with it," and this misrepresentation, like the misrepresentation in 
Correa
, induced defendant to plead guilty.  It is unclear whether the trial court found defendant's testimony credible.  However, even if counsel did make this statement to defendant, we do not find that this statement amounts to the level of the unequivocal, erroneous, and misleading representation made in 
Correa
, in light of the unequivocal statement made to defendant to consult with an immigration attorney.  In fact, counsel's suggestion that defendant contact another attorney was tantamount to a warning not to rely on his advice.  Here, the circuit court concluded that defense counsel's statements were not affirmative misrepresentations that misled defendant to plead guilty, and we do not find the determination of the circuit court manifestly erroneous.  See 
People v. Childress
, 191 Ill. 2d 168, 174 (2000) (a circuit court's decision to deny a postconviction petition following an evidentiary hearing will not be reversed unless that decision is manifestly erroneous).
  Accordingly, defendant's petition for postconviction relief does not make the necessary showing of the first prong of the 
Strickland
 test, and
 we need not address the remaining prong.  See 
Strickland
, 466 U.S. at 697, 80 L. Ed. 2d at 699
, 104 S. Ct. at 2069; 
People v. Eddmonds
, 143 Ill. 2d 501, 511-12 (1991)
.

Defendant next contends that the trial court had a duty to admonish defendant that he could be deported as a result of his felony plea.  We disagree.

In concluding that an attorney has no duty to inform his client of the immigration consequences of a guilty plea, the supreme court in 
Huante
 examined the rationale of Supreme Court Rule 402.  
Huante
, 143 Ill. 2d at 70-71.  Under Rule 402, to ensure that a defendant enters his guilty plea knowingly, the trial judge must advise the defendant of the nature of the charges, the minimum and maximum sentences prescribed by law, and the waiver of trial rights.  To ensure that the defendant enters his guilty plea voluntarily, the judge must determine in open court that the plea was not obtained by coercion, threats, or promises apart from a plea agreement.  
Huante
, 143 Ill. 2d at 70.  "Rule 402 does not require, however, that a defendant be advised of the collateral consequences of his plea."  
Huante
, 143 Ill. 2d at 70.  " 'Rule 402 was designed to insure properly entered pleas of guilty, not to provide for a recital of all the possible sentencing situations that might arise.' "  
Huante
, 143 Ill. 2d at 71, quoting 
People v. Stewart
, 101 Ill. 2d 470, 486 (1984).  

The court noted that courts of review have generally agreed that a defendant's awareness of collateral consequences is not a prerequisite to the entry of a knowing and voluntary plea of guilty.  The court further noted that, under Rule 11 of the Federal Rules of Criminal Procedure (Fed. R. Crim. Proc. 11), federal courts have also held that the validity of a guilty plea is not affected by the failure of the court or counsel to inform a defendant of the myriad consequences that are collateral to a felony conviction.  
Huante
, 143 Ill. 2d at 71; see, 
e.g.
, 
United States v. Campbell
, 778 F.2d 764, 767 (11th Cir. 1985); 
Downs-Morgan v. United States
, 765 F.2d 1534, 1537-38 (11th Cir. 1985)
.  The court found that those decisions reflect "the proper concerns for the sixth amendment guarantee of effective assistance of counsel, for the practical administration of criminal justice, and for the integrity of the plea process."  
Huante
, 143 Ill. 2d at 71.  Based upon the foregoing, it is clear to us that the trial court had no duty to admonish defendant of the collateral consequences of his guilty pleas. 

Defendant does not dispute that a trial court is not obligated to inform a defendant of the 
collateral
 consequences of his plea.  Defendant insists that, because deportation was mandatory, it was actually a direct consequence of his pleas and, therefore, the court was required to explain this to him before he pleaded guilty.  Defendant asserts that, because his deportation was mandatory, 
Huante
 does not apply.  However, the supreme court in 
Huante
 was well aware that the defendant's convictions required his deportation under the relevant federal statute and, regardless, held that deportation is a collateral consequence of a plea of guilty.  
Huante
, 143 Ill. 2d at 65.

Defendant misapprehends the distinction between direct and collateral consequences of a guilty plea.  A
 direct consequence of a plea, of which a defendant must be informed, " 'represents a definite, immediate and largely automatic effect on the range of the defendant's punishment.' "  
People v. Williams
, 188 Ill. 2d 365, 372 (1999), quoting 
Cuthrell v. Director, Patuxent
 
Institution
, 475 F.2d 1364, 1366 (4th Cir. 1973).   In other words, the trial court is obligated "to ensure that a defendant understands [that] the direct consequences of his or her plea encompasses only those consequences of the 
sentence
 that the trial judge can impose."  (Emphasis added.)  
Williams
, 188 Ill. 2d at 372.  Conversely, a collateral consequence " 'is one that is not related to the length or nature of the sentence imposed on the basis of the plea,' " and generally results from an "action taken by an agency that the trial court does not control."  
Williams
, 188 Ill. 2d at 372, quoting 
State v. McFadden
, 884 P.2d 1303, 1304 (Utah App. 1994).  Such examples of collateral consequences include the " ' "loss of public or private employment, effect on immigration status, voting rights, possible auto license suspension, possible dishonorable discharge from the military, 
or
 
anything else
." '  (Emphasis added.) [Citation.]"  
Williams
, 188 Ill. 2d at 372.  Therefore, regardless of whether defendant's deportation was a mandatory result of his guilty pleas, because it had no bearing on his sentences or the nature of his punishment for the commission of his crimes, it was a collateral matter, which the trial court was not required to explain before it accepted defendant's guilty pleas. 

Defendant contends that knowledge of immigration consequences is such an important part of the plea process that even the guilty plea form includes a check box to ensure that the defendant has been informed of and understands those consequences and has made his plea knowingly and voluntarily.  We agree with the State that, though the circuit court of Kane County chose to reference deportation in the guilty plea form, this does not trump the overriding consideration that the trial court had no constitutional obligation to inform defendant of the potential immigration problems resulting from a plea.

For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

McLAREN and O'MALLEY, JJ., concur.