No. 2--05--0466     Filed: 2/9/07

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 03--CF--3230 |
| PATRICK L. MANNING, | ) ) | Honorable Michael J. Burke, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE GROMETER delivered the opinion of the court:

Defendant, Patrick L. Manning, pleaded guilty to one count of residential burglary (720 ILCS 5/19--3 (West 2002)). Due to his prior criminal history, defendant was sentenced as a Class X offender (see 730 ILCS 5/5--5--3(c)(8) (West 2002)), and the trial court imposed a sentence of 22 years' imprisonment. Defendant then moved to withdraw his guilty plea, asserting that trial counsel was ineffective for two reasons. The trial court denied his motion. Defendant now appeals, advancing both arguments he presented to the trial court. First, he argues that counsel should have investigated and advised him regarding the possibility of pleading guilty but mentally ill. See 725 ILCS 5/115--2 (West 2002). Second, he contends that counsel gave him erroneous advice about the term of imprisonment he would receive. We find that both claims lack merit, and we therefore affirm.

In determining whether a defendant should be allowed to withdraw a guilty plea in a case like this, the ultimate question is whether the plea was entered knowingly and voluntarily. People v. Whitfield, 217 Ill. 2d 177, 183 (2005); People v. Young, 355 Ill. App. 3d 317, 322 (2005). There is no absolute right to withdraw a guilty plea. People v. Artale, 244 Ill. App. 3d 469, 475 (1993). Rather, as our supreme court has held:

" 'Where it appears that the plea of guilty was entered on a misapprehension of the facts or of the law, or in consequence of misrepresentations by counsel or the State's Attorney or someone else

in authority, or the case is one where there is doubt of the guilt of the accused, or where the accused has a defense worthy of conside

ration by a jury, or where the ends of justice will be better served by submitting the case to a jury, the court should permit the withdrawal of

the plea of guilty and allow the accused to plead not guilty.' " People v. Davis, 145 Ill. 2d 240, 244 (1991), quoting People v.

<u>Morrea</u> <u>le</u>, 412 Ill. 528, 531-32 (1952).

A defendant bears the burden of demonstrating that, by objective standards, he or she is entitled to withdraw a plea; subjective misimpressions alone are insufficient. <u>Artale</u>, 244 Ill. App. 3d at 475. Whether to permit a defendant to withdraw a guilty plea is a matter within the discretion of the trial court, and a court of review will not disturb the trial court's determination unless that discretion is abused. <u>Davis</u>, 145 Ill. 2d at 244.

Relevant here, one basis upon which a defendant may be allowed to withdraw a guilty plea is where defense counsel has given the defendant inadequate advice prior to the entry of the plea. See, <u>e.g.</u>, <u>People v. Correa</u>, 108 Ill. 2d 541, 553 (1985). However, the simple fact that counsel provided erroneous advice is not enough to render a plea involuntary; rather, a defendant must show that he or she was denied the effective assistance of counsel. <u>People v. Cunningham</u>, 286 Ill. App. 3d 346, 349-50 (1997). In determining whether counsel rendered ineffective assistance during the plea process, the test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), applies. <u>Hill v. Lockhart</u>, 474 U.S. 52, 57, 88 L. Ed. 2d 203, 209, 106 S. Ct. 366, 369-70 (1985); <u>People v. Brown</u>, 309 Ill. App. 3d 599, 604 (1999). To prevail, a defendant must demonstrate that counsel's performance was deficient and that this deficient performance prejudiced the defendant. <u>People v. Pugh</u>, 157 Ill. 2d 1, 14 (1993). In the context of a guilty plea, "prejudice"

means that there is a reasonable probability that the defendant would not have pleaded guilty but for counsel's deficient performance. Pugh, 157 Ill. 2d at 15.

Additional considerations apply in circumstances like those present in this case. First, courts distinguish between cases where attorneys provide erroneous advice and cases where attorneys fail to provide any advice. In Correa, our supreme court considered whether an attorney who advised his client--a legal alien--that a guilty plea would not lead to deportation rendered ineffective assistance. Correa, 108 Ill. 2d at 547-48. The court held that the defendant was entitled to withdraw his guilty plea because of the erroneous advice actually given by the attorney. Correa, 108 Ill. 2d at 553. However, the court expressly declined to address "the passive conduct of counsel in failing to discuss with a defendant the collateral consequences of a guilty plea." Correa, 108 Ill. 2d at 551. Later, in People v. Huante, 143 Ill. 2d 61, 68 (1991), the court considered this issue. Huante also involved a legal alien who, as a consequence of a guilty plea, faced deportation. The defendant and his attorney did not discuss the defendant's status as a legal alien, and the attorney provided no advice whatsoever on how the plea could affect that status. Huante, 143 Ill. 2d at 68. The supreme court determined that the attorney's failure to address the matter did not constitute ineffective assistance of counsel. Huante, 143 Ill. 2d at 72. Thus, Correa and Huante draw a distinction between an attorney giving a client bad advice and an attorney failing to give a client any advice.

A second distinction that courts rely on in cases like this concerns whether the advice--or lack thereof--concerned a direct or a collateral consequence of the plea. A direct consequence is one that is definite, immediate, and largely automatic in its effect upon a defendant's punishment. People v. Frison, 365 Ill. App. 3d 932, 934 (2006). A defendant must be advised of any direct consequences of his or her guilty plea before entering it. People v. Williams, 188 Ill. 2d 365, 371 (1999). Collateral

consequences are unrelated to the length or nature of a sentence. People v. Pequeno, 337 Ill. App. 3d 537, 545 (2003). Often, they result from actions taken by entities beyond the court's control. Pequeno, 337 Ill. App. 3d at 545. A defendant need not be aware of the collateral consequences of a guilty plea in order for the plea to be voluntary. Williams, 188 Ill. 2d at 371.

Thus, from the above-cited cases, the following rules emerge. First, a defendant must be advised of direct consequences of a guilty plea. Second, it is not necessary to advise a defendant about collateral consequences of a guilty plea. Third, if counsel does advise the defendant of a collateral consequence, that advice must not be erroneous.[1] With these precepts in mind, we will now turn to defendant's arguments.

Defendant first argues that trial counsel was ineffective for failing to investigate and advise defendant regarding the possibility of pleading guilty but mentally ill. To resolve this issue, we must first consider whether pleading guilty but mentally ill rather than simply pleading guilty leads to direct or to collateral consequences. If pleading guilty but mentally ill leads to consequences that are immediate, definite, and largely automatic, then such a plea results in direct consequences. Frison, 365 Ill. App. 3d at 934. Otherwise, the plea's consequences are collateral. Thus, we must examine the consequences of entering a plea of guilty but mentally ill and compare them to what transpires following a simple guilty plea.

---

[1]We expressly decline to consider whether erroneous advice on a trivial collateral matter would warrant allowing a defendant to withdraw a plea, or, if such a rule exists, where the line of demarcation is between a trivial collateral matter and a sufficiently serious one, such as deportation as recognized in Correa, 108 Ill. 2d at 553.

The consequences of entering a plea of guilty but mentally ill are set forth in section 5--2--6 of the Unified Code of Corrections (Code) (730 ILCS 5/5--2--6 (West 2002)). The first thing of note in this section is that, following either a plea or a verdict of guilty but mentally ill, "[t]he court may impose any sentence upon the defendant which could be imposed pursuant to law upon a defendant who had been convicted of the same offense without a finding of mental illness." 730 ILCS 5/5--2--6(a) (West 2002). Thus, there is no difference in sentencing. People v. Johnson, 146 Ill. 2d 109, 131-32 (1991). The one difference in how a defendant who has been found guilty but mentally ill and sentenced to prison must be treated is that the Department of Corrections (DOC) "shall cause periodic inquiry and examination to be made concerning the nature, extent, continuance, and treatment of the defendant's mental illness." 730 ILCS 5/5--2--6(b) (West 2002). Thereafter, the DOC shall provide psychological services "as it determines necessary." 730 ILCS 5/5--2--6(b) (West 2002). In appropriate circumstances, the DOC "may transfer the defendant's custody to the Department of Human Services." 730 ILCS 5/5--2--6(c) (West 2002). Thus, the sole mandatory difference in the treatment of a guilty-but-mentally-ill defendant is that the defendant be examined periodically. All other consequences follow only if the DOC deems them necessary. Quite simply, outside of a periodic examination, there is no assurance that the defendant would receive any services, unless the DOC deems them necessary. People v. Lantz, 186 Ill. 2d 243, 264 (1999) ("Nor does a [guilty-but-mentally-ill] verdict guarantee that a defendant will receive treatment for his mental illness while incarcerated"); People v. Rogers, 364 Ill. App. 3d 229, 251 (2006) (Hutchinson, J., concurring in part and dissenting in part) ("Pleading guilty but mentally ill also did not necessarily guarantee that defendant would receive specific treatment for his mental illness while incarcerated"); cf. People v. Kaeding, 98 Ill. 2d 237, 244 (1983) ("In our opinion defendant misinterprets section 5--2--6(e)(1)

in construing it as mandating the court to provide a course of treatment for every nonincarcerated defendant"). As such, treatment is not immediate, definite, and largely automatic and consequently is not a direct consequence of a guilty-but-mentally-ill plea. See Frison, 365 Ill. App. 3d at 934 (application of truth-in-sentencing provisions of Code is a collateral consequence because there is no assurance that the defendant would receive any good-conduct credit); People v. Maury, 287 Ill. App. 3d 77, 82-83 (1997) (erroneous advice regarding eligibility for early-release program did not render guilty plea involuntary, because it was uncertain whether defendant would receive credit for participation in program in any event). Indeed, such services are rendered at the discretion of the DOC. Lantz, 186 Ill. 2d at 264 n.1 ("Section 5--2--6 of the Unified Code of Corrections leaves treatment of a [guilty-but-mentally-ill] offender completely within the discretion of the Department of Corrections"). Therefore, the only consequence requiring further consideration is the DOC's obligation to conduct periodic examinations of a defendant, following a guilty-but-mentally-ill conviction.

Where a defendant is incarcerated following an ordinary guilty plea, he or she is entitled to medical treatment. The eighth amendment to the federal constitution (U.S. Const., amend. VIII) requires that prison officials ensure that inmates receive adequate medical care. McNeil v. Brewer, 304 Ill. App. 3d 1050, 1053 (1999), citing Estelle v. Gamble, 429 U.S. 97, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976), and Farmer v. Brennan, 511 U.S. 825, 128 L. Ed. 2d 811, 114 S. Ct. 1970 (1994). This requirement includes the provision of necessary mental health services. Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994) (requirements for constitutionally adequate mental health care the same as those for physical health care); Capps v. Atiyeh, 559 F. Supp. 894, 917 (D. Or. 1983); Robert E. v. Lane, 530 F. Supp. 930, 939 (N.D. Ill. 1981).

Thus, regardless of whether an inmate is incarcerated pursuant to a plea of guilty or a plea of guilty but mentally ill, the State is required to provide adequate mental health services. In fact, the Fourth District of this court, considering the question in a somewhat different context, observed the following:

"Since prison sentences imposed upon persons found guilty but mentally ill are a direct result of criminal offenses of which such persons have been convicted following trials in which they enjoyed the full panoply of procedural safeguards available to other adult defendants, it follows that such prisoners enjoy no separate constitutional right to treatment for their mental health problems beyond the constitutional right to minimally adequate medical care which is applicable to all prisoners." People v. Marshall, 114 Ill. App. 3d 217, 233 (1983)

In other words, pleading--or being adjudicated--guilty but mentally ill vests a prisoner with no right that he or she does not otherwise have as a result of being imprisoned. The periodic examinations required by section 5--2--6(b) (730 ILCS 5/5--2--6(b) (West 2002)) lead to the same health care available to all prisoners as mandated by the eighth amendment. As such, a plea of guilty but mentally ill leads to no consequences other than those that are visited upon all prisoners.

However, before leaving this portion of the opinion, we will briefly comment on one case cited by defendant. In People v. Lantz, 186 Ill. 2d 243, 258 (1999), our supreme court wrote, "[W]e do not believe that the [guilty-but-mentally-ill] verdict represents a meaningless option." The court noted that one of the purposes of section 5--2--6 (730 ILCS 5/5--2--6 (West 1994)) is to allow the trier of fact to "identify offenders who are in need of treatment while they are incarcerated." Lantz, 186 Ill. 2d at 259. We do not disagree with either statement; however, neither addresses whether the consequences that flow from a plea of guilty but mentally ill are direct or collateral. Indeed, treatment

remains at the discretion of the DOC. 730 ILCS 5/5--2--6(b) (West 2002). Defendant finds this discretion problematic. However, the legislature, in section 5--2--6 (730 ILCS 5/5--2--6 (West 2002)), placed what treatment a prisoner will receive, if any, within the discretion of the DOC. Second, and more importantly, the eighth amendment constrains that discretion by mandating that prisoners--regardless of the nature of their convictions--receive adequate health care while incarcerated. McNeil v. Brewer, 304 Ill. App. 3d at 1053.

To conclude, we hold that the additional consequences of a plea of guilty but mentally ill as opposed to a simple guilty plea are collateral and that therefore counsel need not advise a defendant of the possibility of pleading guilty but mentally ill prior to the entry of a plea of guilty. See People v. Bouzidi, 332 Ill. App. 3d 87, 92 (2002) (holding that "defense counsel's failure to advise the defendant of the collateral consequences of his guilty plea did not render his performance deficient"). Outside of periodic examinations, no particular course of treatment is certain to result from such a plea. Treatment is not immediate, definite, or largely automatic, and, moreover, is potentially available to any prisoner. An examination, in itself, has no value aside from the care to which it may or may not lead. Finally, regardless of whether defendant pleaded guilty or guilty but mentally ill, he was subject to the same range of sentences; hence, as the Fourth District has previously observed, "even if counsel had recommended that defendant plead [guilty but mentally ill] and the trial court had accepted that plea, the outcome would have been the same." People v. Davison, 292 Ill. App. 3d 981, 993 (1997)

Moreover, even if we were to conclude that defense counsel's performance was deficient, defendant has nevertheless failed to establish that counsel was ineffective. To demonstrate ineffectiveness of trial counsel, defendant must show prejudice. Pugh, 157 Ill. 2d at 15. That is,

defendant must show that a reasonable probability exists that had he been made aware of the possibility of pleading guilty but mentally ill and been denied that option, he "would not have pleaded guilty and would have insisted on going to trial." Pugh, 157 Ill. 2d at 15. Defendant has failed to establish prejudice in this case. We see no reasonable probability that defendant would have refrained from pleading guilty in order to pursue a verdict of guilty but mentally ill where the treatment available to him in prison is the same in either case, as is the sentencing range.

Defendant also argues that his attorney rendered ineffective assistance by telling him that he would be sentenced to between 8 and 15 years' imprisonment. Undoubtedly, the actual sentencing range to which a defendant may be sentenced is a direct consequence of a guilty plea. Brown, 309 Ill. App. 3d at 605. The problem with this argument, however, is that it lacks a factual basis. The trial court found that defendant's attorney never told defendant that he would receive a sentence of between 8 and 15 years' imprisonment. We will overturn a trial court's factual determination only where it is contrary to the manifest weight of the evidence. People v. Green, 358 Ill. App. 3d 456, 458 (2005); People v. Gonzalez, 351 Ill. App. 3d 192, 201 (2004). Given the state of the record, we cannot conclude that this finding was in error.

Indeed, defendant's trial counsel testified that she informed defendant that he was eligible for Class X sentencing and that the range of possible sentences was between 6 and 30 years. On one occasion, according to trial counsel, she went over a copy of the sentencing statute with defendant because he did not understand why he was eligible to be sentenced as a Class X offender. Defendant told his attorney that he wanted a sentence of 8 to 10 years. She told him that that was not realistic and that he should be happy if he received a 15-year sentence. Defendant asked her if an eight-year sentence was possible. She stated that it was possible, as it was within the sentencing range, but

unrealistic. She also informed defendant that she believed that the State's offer of 20 years was possible. The attorney acknowledged that she told defendant that she did not think he would get more than 20 years but that she was not sure, because the sentence was "up to the judge." On a subsequent occasion when trial counsel spoke with defendant, he stated that he still hoped for 8 to 10 years. She again told him the possible range was 6 to 30 years and that what he was hoping for was unrealistic. The trial court found her "very credible."

In arguing to the contrary, defendant relies on his own testimony and that of Lawrence Reckner. Reckner held a weekly Bible class at the Du Page County jail, and, in this capacity, he came to know defendant. Reckner testified that he called defendant's trial counsel and spoke with her about defendant's case. According to Reckner, she told him that defendant's best option was to enter a blind plea and that she hoped defendant would receive a sentence of between 8 and 15 years' imprisonment. Reckner acknowledged that she stated that the range of potential sentences was from 6 to 30 years. The attorney also faxed Reckner a copy of the statute that contained the proper sentencing range. Reckner further related that defendant asked him whether the 6 to 30 year range was correct. After speaking with defendant's attorney, Reckner informed defendant that this was, in fact, the range of possible sentences.

Defendant testified that his trial attorney told him, "[Y]ou're not going to get 20 years. You're going to get between 8 and 15." According to defendant, she told him this each time defendant came to court, including the day on which he entered his plea of guilty. Further, defendant stated that he entered his plea in reliance on his attorney's statements that he would receive a sentence of 8 to 15 years, and he stated that he would have gone to trial if he thought he would be sentenced to more than 15 years. During cross-examination, defendant acknowledged that counsel told him that Class

X sentencing meant a sentence of between 6 and 30 years. He also agreed that the trial judge admonished him of the possibility of a sentence within that range.

The trial judge accepted defendant's attorney's testimony and found that defendant's testimony "makes no sense to me whatsoever." Assessing the credibility of witnesses and resolving such conflicts in the evidence are, of course, matters for the trier of fact. People v. Salinas, 347 Ill. App. 3d 867, 880 (2004). Further, the number of witnesses testifying for one side or the other is not dispositive. See People v. Hanlon, 137 Ill. App. 3d 305, 318 (1985); Thornton v. Rhodus Mobile Homes, Inc., 104 Ill. App. 3d 869, 872 (1982). Thus, the mere fact that Reckner testified in addition to defendant did not preclude the trial court from accepting the attorney's version of events. Defendant never directly addresses this conflict in the testimony presented to the trial court. Defendant's attorney's testimony does not seem so incredulous to us, nor defendant's and Reckner's testimony so persuasive, that the trial court was compelled to accept the version of the facts advocated by defendant. Because the trial court accepted trial counsel's testimony regarding the information she provided to defendant as to possible sentences, the argument defendant advances here is without a factual foundation.

In light of the foregoing, we are persuaded by neither of defendant's assertions that trial counsel was ineffective. Therefore, the order of the circuit court of Du Page County denying defendant's motion to withdraw his guilty plea is affirmed.

Affirmed.

HUTCHINSON and CALLUM, JJ., concur.