#26257-a-LSW

**2013 S.D. 46**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

 v.

PABLO GARCIA,                             Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
BEADLE COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JON R. ERICKSON
Judge

* * * *

MARTY J. JACKLEY
Attorney General

DOUGLAS P. BARNETT
Assistant Attorney General
Pierre, South Dakota                      Attorneys for plaintiff
              and appellee.


GINA J. ROGERS
Aberdeen, South Dakota                    Attorney for defendant
              and appellant.

* * * *

CONSIDERED ON BRIEFS
ON NOVEMBER 6, 2012

OPINION FILED **06/26/13**

#26257

WILBUR, Justice

[¶1.]     Pablo Garcia appeals from the trial court's denial of his motion to re-open and vacate judgment.  In applying the principles set forth in *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989), the trial court determined that the rule announced in the United States Supreme Court's holding in *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010) was a new rule that does not apply retroactively.  We affirm.

## FACTS AND PROCEDURAL HISTORY

[¶2.]     Garcia was born in Mexico.  Prior to his first birthday, Garcia's mother moved with Garcia to the United States.  Following this move, Garcia has spent the majority of his life, 35 years, in the United States.

[¶3.]     On September 26, 2003, Garcia was indicted for possession with intent to distribute more than one pound of marijuana, a Class 3 felony, in violation of SDCL 22-42-7.  In addition, Garcia was indicted for possession of one to ten pounds of marijuana, a Class 4 felony, in violation of SDCL 22-42-6.  On October 1, 2003, the State filed a part two information alleging that Garcia had previously been convicted of two felonies, subjecting him to a possible enhanced sentence under SDCL 22-7-7.

[¶4.]     Garcia, represented by counsel,[1] pleaded guilty to possession of one to ten pounds of marijuana under SDCL 22-42-6 on January 13, 2004.  In exchange for Garcia's guilty plea, the State dismissed the remaining charge and the part two information.  Additionally, prior to sentencing, a presentence investigation was

---

1.     Garcia's appellate counsel did not represent him at his plea hearing.

-1-

conducted and a report was prepared. The report erroneously indicated that Garcia was born in Uvalde, Texas.

[¶5.] Garcia was sentenced to a three-year penitentiary term. A judgment of conviction was filed on February 24, 2004, and a notice of entry of judgment of conviction was filed on February 27, 2004.

[¶6.] In November 2005, the United States commenced removal proceedings against Garcia. The notice to appear in the removal proceedings alleged that Garcia had been admitted to the United States, but because he had been convicted of an aggravated felony, he was subject to removal from the United States. A warrant of removal/deportation was issued on January 3, 2006, resulting in Garcia's deportation.

[¶7.] Following Garcia's removal, a new permanent resident card arrived at Garcia's South Dakota residence, where Garcia's fiancée and children continued to reside. Garcia re-entered the United States in September 2006. On January 18, 2007, the South Dakota Department of Corrections discharged Garcia from its supervision.

[¶8.] On September 20, 2011, Garcia acknowledged his receipt of a notice of intent/decision to reinstate the prior removal/deportation order. Garcia was then charged by the United States Attorney for the District of South Dakota with illegal re-entry to the United States, but the charge was dismissed on October 11, 2011.

[¶9.] Nearly four years and ten months after he was released from the Department of Corrections' supervision, Garcia filed a motion to re-open and vacate judgment regarding his February 2004 conviction for felony possession of

marijuana. Relying on the United States Supreme Court's holding in *Padilla*, Garcia argued that his counsel was deficient under the Sixth Amendment and that Garcia would not have pleaded guilty if his counsel would have advised him of the potential deportation consequences.

[¶10.] Prior to the motion hearing, the trial court contacted Garcia's plea counsel via email and inquired as to counsel's advice to Garcia of the potential deportation consequences of a guilty plea. Counsel responded: "I am just about 100% sure that I did not advise him of the deportation consequences. I remember him and his family and I did not ever contemplate that he was not a U.S. citizen, therefore, I would not have had a reason to advise him."

[¶11.] Subsequently, the trial court issued a memorandum decision denying Garcia's motion. In applying the principles set forth in *Teague*, the trial court held that *Padilla* announced a new rule that did not apply retroactively.

[¶12.] Garcia appeals the following issues:

1. Whether the holding in *Padilla* is a new rule for the purpose of determining whether it applies retroactively.

2. Whether *Padilla* shall be applied retroactively to cases decided prior to the decision in *Padilla*.

**STANDARD OF REVIEW**

[¶13.] Whether *Padilla* applies retroactively to a conviction that was final at the time *Padilla* was decided is a legal question that we review de novo. *State v. Houston*, 702 N.W.2d 268, 270 (Minn. 2005) (reviewing de novo whether *Blakely v. Washington,* 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), applied retroactively to a conviction that was final at the time *Blakely* was decided).

## ANALYSIS AND DECISION

[¶14.] On appeal to this Court, Garcia contends that the rule announced in *Padilla* constitutes an old rule because it is a mere extension of the Sixth Amendment of the United States Constitution and the South Dakota Constitution. Accordingly, Garcia argues that the rule in *Padilla* applies retroactively to his case. In support of his position, Garcia testified at the motion hearing that Garcia advised his counsel that he was not a citizen of the United States and asked about the possibility of pleading guilty. Garcia stated that his counsel "didn't even acknowledge [Garcia's] question" and "didn't give [Garcia] the proper answer that [he] wanted when [he] asked [his counsel] that." In providing further elaboration as to his answer, Garcia then testified that his counsel did not give him an answer at all. In response to Garcia's arguments, the State contends that the rule in *Padilla* was a new rule that does not apply retroactively.

[¶15.] In 2010, the United States Supreme Court in *Padilla* held that the Sixth Amendment requires criminal defense attorneys to inform noncitizen defendants of the risk of deportation arising from guilty pleas. 559 U.S. at ___, 130 S. Ct. at 1486. Faced with a jurisdictional split over whether this rule applied retroactively to cases that became final prior to *Padilla*, the United States Supreme Court granted certiorari in *Chaidez v. United States*, 655 F.3d 684 (7th Cir. 2011), *cert. granted*, ___ U.S. ___, 132 S. Ct. 2101, 182 L. Ed. 2d 867 (2012).

[¶16.] In *Chaidez v. United States*, the United States Supreme Court held that *Padilla* announced a new rule that does not have retroactive effect. ___ U.S. ___, ___, 133 S. Ct. 1103, 1111, 1113, 185 L. Ed. 2d 149 (2013). "Under *Teague*,

defendants whose convictions became final prior to *Padilla* . . . cannot benefit from its holding." *Id.* at __, 133 S. Ct. at 1113. Stated another way, the rule announced in *Padilla* only applies to cases that became final *after Padilla. See id.*

[¶17.]     This Court, however, has previously deemed "the *Teague* rule to be unduly narrow as to what issues it will consider on collateral review." *Cowell v. Leapley*, 458 N.W.2d 514, 518 (S.D. 1990). *See Danforth v. Minnesota*, 552 U.S. 264, 281, 128 S. Ct. 1029, 1042, 169 L. Ed. 2d 859 (2008) (citing *Cowell* as an example of a state court decision that has "understood the *Teague* rule as binding only federal habeas courts, not state courts"). We opined that "[w]hile the substance of what is to be applied is a federal constitutional matter, the decision on what criteria to use to determine prospective or retroactive application is a nonconstitutional state decision." *Cowell*, 458 N.W.2d at 517. Accordingly, we use "the following criteria to determine whether a particular decision should be given [retroactive] effect [in South Dakota]: '(1) The purpose of the decision, (2) reliance on the prior rule of law, and (3) the effect upon the administration of justice.'" *Id.* at 517 (quoting *McCafferty v. Solem* (*McCafferty III*), 449 N.W.2d 590, 593 (S.D. 1989), *superseded on other grounds by State v. Raymond*, 540 N.W.2d 407, 409 (S.D. 1995)). Thus, while the trial court relied on the *Teague* factors in its analysis of the *Padilla* decision, we adhere to the *Cowell* precedent in analyzing whether *Padilla* applies retroactively.

[¶18.]     **a. The Purpose of the Decision**

[¶19.]     The purpose of the *Padilla* decision was to require, in accordance with the Sixth Amendment, criminal defense attorneys to inform noncitizen clients of the

risks of deportation arising from guilty pleas. 559 U.S. at ___, 130 S. Ct. at 1486.

The United States Supreme Court reasoned that:

> changes to our immigration law have dramatically raised the stakes of a noncitizen's criminal conviction. The importance of accurate legal advice for noncitizens accused of crimes has never been more important. These changes confirm our view that, as a matter of federal law, deportation is an integral part – indeed, sometimes the most important part – of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes.

559 U.S. at __, 130 S. Ct. at 1480 (footnote omitted). Additionally, this Court has said that "[t]he reason to apply a new decision retroactively is when the new constitutional decision is designed to improve the accuracy of criminal trials." *Cowell*, 458 N.W.2d at 518.

[¶20.] Nothing from our reading of *Padilla* suggests that the purpose of this rule is designed to improve the accuracy of criminal trials or enhance the reliability of the fact-finding process. *Padilla* does little to show the actual guilt or innocence of the individual. Rather, *Padilla*'s purpose concerns counsel's advice to a defendant regarding the potential penalty – deportation – that may be imposed as a result of a guilty plea. Thus, the *Padilla* decision was not designed to improve the accuracy of criminal trials nor to enhance the fact-finding process.

[¶21.] **b. Reliance on the Prior Rule of Law**

[¶22.] At the time of Garcia's guilty plea in 2004, this Court had not yet addressed whether the failure to advise a defendant of the risk of deportation amounted to ineffective assistance of counsel. In our 2005 decision in *Nikolaev v. Weber*, we held that "the overwhelming majority of courts to have addressed the question have held that deportation is a collateral consequence of the criminal

process, and hence that, nothing else appearing, the failure to advise the defendant of the possibility of deportation does not amount to ineffective assistance of counsel." 2005 S.D. 100, ¶ 11, 705 N.W.2d 72, 76 (quoting *State v. Zarate*, 651 N.W.2d 215, 222 (Neb. 2002)), *abrogated by Chaidez*, ___ U.S. at ___, 133 S. Ct. at 1113. Subsequently, we denied Nikolaev relief on the same basis. *See Nikolaev*, 2005 S.D. 100, ¶¶ 9-14, 705 N.W.2d at 75-77. Accordingly, the rule of law pronounced in *Nikolaev* in 2005 was exactly the opposite of the rule announced in *Padilla* in 2010.

[¶23.]     Even though in 2004 at the time of Garcia's guilty plea, we had not yet addressed whether the failure to advise a defendant of the risk of deportation amounted to ineffective assistance of counsel, the almost universal holding among federal and state courts at that time was that the failure to advise a defendant of the deportation consequences of a guilty plea was not ineffective assistance of counsel.[2] Consequently, given the body of state and federal case law at the time of

---

2.     As noted in *Nikolaev v. Weber*, the following cases decided prior to 2004 are examples of the state and federal courts that held that failure to inform a defendant of the potential deportation consequences of a guilty plea did not constitute ineffective assistance of counsel:

> *United States v. Fry*, 322 F.3d 1198, 1200 (9th Cir. 2003); *United States v. Gonzalez*, 202 F.3d 20, 28 (1st Cir. 2000); *U[nited] S[tates] v. Banda*, 1 F.3d 354 (5th Cir. 1993); *U[nited] S[tates] v. Del Rosario*, 902 F.2d 55 (D.C. Cir. 1989); *U[nited] S[tates] v. George*, 869 F.2d 333 (7th Cir. 1989); *U[nited] S[tates] v. Yearwood*, 863 F.2d 6 (4th Cir. 1988); *United States v. Campbell*, 778 F.2d 764 (11th Cir. 1985); *United States v. Santelises*, 509 F.2d 703 (2nd Cir. 1975); *People v. Pequeno*, . . . 786 N.E.2d 1071, 1076 ([Ill. App. Ct.] 2003); *State v. Muriithi*, . . . 46 P.3d 1145 ([Kan.] 2002); *State v. Montalban*, 810 So. 2d 1106 (La. 2002); *People v. Davidovich*, . . . 618 N.W.2d 579 ([Mich.] 2000);
>
> (continued . . .)

Garcia's plea, defense counsel in South Dakota would have justifiably relied upon this almost universal holding – the failure to advise a defendant of the deportation consequences of a guilty plea did not constitute ineffective assistance of counsel.

[¶24.] Furthermore, Garcia's defense counsel in his 2004 guilty plea would not have had a reason to question Garcia's citizenship. Counsel's belief is supported by the presentence investigation report, which stated that Garcia was born in the United States, and by Garcia's own admission at the motion hearing that he was 35 years old and had lived in the United States for 35 years. Garcia also had two prior felony drug convictions and had not been previously deported. Thus, at the time of Garcia's guilty plea, Garcia's counsel justifiably relied on the almost universal case precedent in state and federal courts and the information available to him.

[¶25.] **c. The Effect Upon the Administration of Justice**

[¶26.] The retroactive application of *Padilla* would carry with it the potential to have a disruptive effect on the criminal justice system. Specifically, there exists the likelihood that applying *Padilla* retroactively would undermine the finality of any guilty plea in South Dakota made prior to and in contradiction to the United States Supreme Court's holding in *Padilla*. We are mindful in our analysis of this criterion, however, that the United States Supreme Court dismissed concerns that

---

(. . . continued)

> *State v. Rosas*, . . . 904 P.2d 1245 ([Ariz. Ct.] App. 1995); *People v. Ford*, . . . 657 N.E.2d 265 ([N.Y.] 1995); *State v. Dalman*, 520 N.W.2d 860 (N.D. 1994); *Com[monwealth] v. Frometa*, . . . 555 A.2d 92 ([Pa.] 1989); *Mott v. State*, 407 N.W.2d 581 (Iowa 1987); *State v. Santos*, . . . 401 N.W.2d 856 ([Wis. Ct.] App. 1987); *Tafoya v. State*, 500 P.2d 247 (Alaska 1972).

2005 S.D. 100, ¶ 11, 705 N.W.2d at 76.

its ruling in *Padilla* would undermine the finality of pleas. 559 U.S. at ___, 130 S. Ct. at 1484-85. [3]

## CONCLUSION

[¶27.]     In weighing the three *Cowell* criteria together, we will not apply the United States Supreme Court's decision in *Padilla* retroactively to cases that were decided prior to *Padilla.* This includes Garcia's case. Additionally, in spite of the fact that the trial court used the principles set forth in *Teague* instead of the *Cowell*

---

3.     The United States Supreme Court noted that,

> We have given serious consideration to the concerns that the Solicitor General, respondent, and *amici* have stressed regarding the importance of protecting the finality of convictions obtained through guilty pleas. We confronted a similar "floodgates" concern in *Hill,* but nevertheless applied *Strickland* to a claim that counsel had failed to advise the client regarding his parole eligibility before he pleaded guilty.
>
> A flood did not follow in that decision's wake. Surmounting *Strickland's* high bar is never an easy task. Moreover, to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances. There is no reason to doubt that lower courts—now quite experienced with applying *Strickland*—can effectively and efficiently use its framework to separate specious claims from those with substantial merit.
>
> It seems unlikely that our decision today will have a significant effect on those convictions already obtained as the result of plea bargains. For at least the past 15 years, professional norms have generally imposed an obligation on counsel to provide advice on the deportation consequences of a client's plea. We should, therefore, presume that counsel satisfied their obligation to render competent advice at the time their clients considered pleading guilty.

> *Padilla*, 559 U.S. at ___, 130 S. Ct. at 1484-85 (internal citations and explanatory parentheticals omitted).

-9-

criteria, we affirm the trial court's decision.  *See Cowell*, 458 N.W.2d at 519 (affirming the trial court's decision even though it used *Teague* in its analysis of the potential retroactive effect of the United States Supreme Court's decisions in *Edwards v. Arizona*, 451 U.S. 477, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981), and *Arizona v. Roberson*, 486 U.S. 675, 108 S. Ct. 2093, 100 L. Ed. 2d 704 (1988)).

[¶28.]      GILBERTSON, Chief Justice, and KONENKAMP, ZINTER and SEVERSON, Justices, concur.